Submitted and Decided December 17, 1896.

*Crawford & Crawford*, for movant.

---

## PHENIX INSURANCE COMPANY v. SEARLES.

*Atkinson, J.*—1. Facts communicated to an insurance agent who in behalf of the company represented by him receives and acts upon an application for insurance, collects the premium and issues the policy, are in law considered as having been communicated to the company itself, and the agent's knowledge of such facts is imputable to it.

2. Although a policy covering a house stipulated that it should be void if the house was "on ground not owned by the insured

7

in fee simple," and the building thus insured was in fact on land owned by another, the policy, so far as relates to this matter, was nevertheless binding upon the company if an agent such as is above described knew at the time of issuing the policy the real facts as to ownership.

3. In the absence of such knowledge, either on the part of the company itself or its agent, the policy would be void if the house was in fact located upon land not belonging to the insured; and therefore, where upon the trial of an action thereon it was a disputed issue as to whether the agent did or did not, at the time of issuing the policy, know that the house was upon land belonging to one other than the insured, it was error to charge, in substance, that if the insurer, before issuing the policy, made no inquiry as to the question of ownership, and the insured communicated to it no information on this subject, the policy would not be void; and to refuse to charge that if the company had no notice or information until after the fire that the house was located on land belonging to a party other than the insured, there should be a verdict for the defendant.

4. A statement made by such an agent to the insured, within the time during which the latter, under the terms of the policy, was allowed to furnish proofs of loss, that the company declined or refused to pay the loss, will amount to a waiver of such proofs; but where proofs of loss were not furnished within the time stipulated, a subsequent refusal to pay would not be such a waiver.

5. Where a policy of insurance, after stipulating that unless certain proofs of loss were furnished within a specified time the policy should be void, further provided that the company might require of the insured additional information or evidence as to the nature and extent of the loss; that the latter should submit to written examinations under oath concerning the same; and that, in the event of disagreement as to the amount of loss, there should be an appraisement thereof; and also stipulated: "This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for": *Held,* that the company did not, by availing itself of its right under the policy to obtain such additional information, etc., waive any forfeiture of the policy which may have resulted from the failure of the insured to furnish, within the time prescribed, the proofs of loss called for in the first instance. Especially is this so where, in undertaking to exercise this right, the company expressly stated in writing to counsel for the insured that it

did so "without waiving any of the rights of the company under the policy." *Judgment reversed.*

Argued June 15, 1896.—Decided February 27, 1897, by SIMMONS, Chief Justice, and LUMPKIN and ATKINSON, Associate Justices.

Action on insurance policy. Before Judge Eve. City court of Richmond county. May term, 1895.

On November 1, 1893, a policy of fire insurance for $300 was issued on a dwelling-house in Augusta, for twelve months from that date. Upon oral application for the policy, the local agents of the insurance company sent an inspector to examine the premises, and issued the policy after such examination was made. The applicant, in stating to said agents where the house was, informed them that it was on Dr. Harison's land. The premium for the policy ($3.00) was received by the company's agents at the time of the application, and they delivered the policy to the applicant on the next day. On December 21, 1893, the house was totally destroyed by fire, and on February 21, 1894, formal proofs of loss were made and forwarded to the general agent of the company in Atlanta where they were received on the next day. Suit was brought on the policy in July, 1894. The plaintiff contended, that immediately after the fire she gave the company verbal notice of the loss, and it sent an adjuster who, after coming to the scene of the fire and having several talks with plaintiff, did not adjust the loss nor seek to do so; that during the sixty days next after the fire the company refused entirely to pay the loss, and has ever since continued so to refuse; and that it has kept the formal proofs of loss, making no objection thereto, nor placing its refusal to pay upon the ground of any defect therein. The company contended, that at the time of the fire the plaintiff did not own the land upon which the house was built, which fact was not known to it until after the fire, and the policy by its terms was thereby rendered void; that the house was not worth more than $100, and plaintiff attempted to

perpetrate a fraud on defendant in representing it to be worth $300, thereby avoiding the policy; that the company never waived the making of formal proofs of loss within sixty days after the fire, as required by the policy, nor did it deny liability within said sixty days, etc.

The policy sued on was the New York standard form fire policy, and the substance of the conditions thereof, so far as material to this report, appear from the headnotes and the foregoing and following statement. The evidence shows that the house was owned by plaintiff and built on land leased by her from Dr. Harison. It is conflicting on the issues of fact already indicated. The plaintiff obtained a verdict for the amount for which she sued, and the motion for a new trial was overruled. The motion alleges, beside the general grounds, that the court erred in the following charges to the jury:

"The first question for you to determine is, was the proof of the loss submitted according to the contract of insurance; that is, was it submitted within sixty days after the fire? If they were not submitted within sixty days after the fire, then was the submission of proofs waived by the company rendering it unnecessary? If you find, from the testimony submitted to you, that the company within sixty days refused to pay or denied their liability, and such denial or refusal was communicated to the plaintiff, then it was unnecessary to have made the proof within the time.

"If you believe from the testimony that proof was asked after the expiration of sixty days and without any express refusal to waive any right, then that would be a waiver of the production. But if the proof was asked accompanied by an express statement of a refusal to waive, then it would not be a waiver.

"Objections to proofs of loss are waived where the proofs furnished are retained without objections and refusal of payment is not based thereon. A demand by an insurance company for further proof is a waiver of the right to object.

to the failure of the insured to furnish proof of loss within the time limited by the policy. An insurance company that has exercised the right given it by the policy to examine under oath the assured as to matters affecting the loss, cannot afterwards claim a forfeiture on the ground that the examination of the insured had not furnished proofs of loss, unless the request to examine was accompanied by the declaration that they waived none of their rights." (The policy provided as follows: "The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made. This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required.")

"Insurance companies, or their agents, are of course presumed to know what facts and circumstances are material to the risk offered, much better than the persons who are applying for insurance; and if they choose to accept the risk without inquiry, and where a loss occurs it appears that some fact which the insurance company may regard as material to the risk was not communicated by the insured, this is not held in law to operate as a forfeiture of the policy, unless it also appears that the insured either knew

at the time, or ought to have known, that such facts were material." (Defendant contended that it was the duty of the insured to represent to the insurance company correctly the risk, and to state the character thereof. Among the provisions of the policy were these: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the interest of the insured be other than unconditional and sole ownership, or if the subject of interest be a building on ground not owned by the insured in fee simple. This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto; and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured, unless so written or attached.")

"Inasmuch as the insurance companies when applied to for insurance have the right to make the fullest and most minute inquiries, the insured has a right to assume, if no such inquiries are made, either that the insurance companies or their agents are fully acquainted with all the facts material to the risk, or that they do not regard such facts as are not stated as material. If the insurer asks no information, and the insured makes no representations, it must be presumed that the insurer had, in person or by agent in such a case, obtained all the information desired to take the risk without it; and the insured being asked no questions, has a right to presume that nothing on the risk

is desired from him. If it is essential for an underwriter to know by what title the insured holds the property, that inquiry should be made at the time of issuing the policy, and not deferred until a loss has occurred. If the defendant saw fit to issue the policy without specific inquiries of the plaintiff, or of some one making the application for her for the insurance, as to the title to the land, and without any representation by the plaintiff on this point, it was the company's own carelessness, and it cannot void the policy without intentional misrepresentations or concealment on plaintiff's part. Under the statement that she is the owner, insured is only bound to show such interest as would subject her to loss if no insurance. A lessee has an insurable interest and a right to insure that which belongs to him or her, though on leased ground. If the insurance company who made out this policy (if upon a verbal application to their agent) had desired to know what interest it was they were insuring, they should have stated it in that part of the policy pertaining to the risk. The provision herein referred to, as to having the endorsement on the policy or annexed to the policy, so far as this case is concerned, applies only to such changes, if any, as might arise after the policy has been delivered and accepted, in the ownership of the property, or if the building stood on leased ground the ownership of the building. It does not apply to an existing state or condition of the property at the time the policy was issued. It looks to the future for protection of the insurer, and not to the present, only in so far as the preceding portion of the policy is violated by misstatement or concealment of facts material to the risk."

Error was further assigned on the court's refusal to charge the following as requested: "If you believe that Jones, the agent of the insured, did not say to Symmes, the agent of the insurance company, at or about the time of the issuance of the policy of insurance, that the house insured was located on land belonging to a party other than

the insured, and that the insurance company had no notice or information that the house insured was located on land other than plaintiff's, until after the fire, you must find for the defendant. If you believe that at or about the time of the issuance of the policy of insurance sued on, Jones stated to Symmes that the house insured was on land belonging to another than insured, and Symmes did not hear such statement, the insurance company could not be bound by such statements made in the presence of its agent and not heard or understood by him, and plaintiff could not recover in this case. If you believe that at the time of taking the policy sued on, or at any time before the issuance of the policy, it was not communicated to the company, or its agents, that the plaintiff did not own the land on which the house described in the policy stood, you shall find for the defendant.

"If you find that the agents for the company did not deny liability before sixty days after the loss, then you should find for the defendant, as the plaintiff did not supply proofs of loss within sixty days after the loss, as required by the policy.

"I charge you that the policy issued to the plaintiff contains the contract of insurance, and her acceptance of the policy was an assent to its conditions, and that constituted the agreement between her and the company.

"I further charge you that if you find that George Symmes was not authorized by the defendant to waive proof of loss or deny liability, you should find for the defendant, since it is acknowledged that the proofs of loss were not sent in sixty days to the office of the defendant in Atlanta.

"I further charge you that the policy of insurance and none of its conditions could be waived, except by endorsements made thereon in writing; and I charge you that if you find that Georgia Searles did not own the land on which the insured house stood, you must find for the defendant."

Error also, in permitting Georgia Searles, over objection, to testify: "I went and asked Mr. Symmes what the company was going to do about the insurance; and he told me that he would write and see what they were doing, and that he would tell me; and on Saturday I went and asked him what they were doing, and he then said they refused to pay it." The objection was on the ground, that Symmes was a local agent and had no authority to bind defendant; and that if there was any authority to the effect that the company would not pay, it must be in writing, as the general agent lived in Atlanta and Symmes lived in Augusta. And in allowing plaintiff, over objection, to answer the question: "Did you know at the time this house was insured that the company would object to insuring a house on leased ground?" the answer being in the negative. The objection was, that the policy is a contract and should speak for itself, and plaintiff could read and write and had the policy in her possession.

*Glenn, Slaton & Phillips*, for plaintiff in error.
*Marcellus P. Foster*, contra.