CONTINENTAL INSURANCE COMPANY *v.* WICK-HAM, and *vice versa.*

1. It is not essential for the purpose of reviewing a judgment overruling a motion for a new trial, that the judgment itself should be specified and brought to this court as a part of the record, or that the terms of the judgment should be set forth in the bill of exceptions. It is sufficient if that document states the fact that the motion was overruled.
2. A refusal to pay anything upon a policy of fire-insurance, if made by an authorized agent of the insurer, is a waiver of a stipulation in the

9

policy that the loss thereunder "shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss" have been received by the insurer. There was in the present case sufficient evidence to show that the defendant's agent had authority to represent it in determining whether or not the policy should be paid.

3. In passing upon a motion for a nonsuit the judge properly assumes that all conflicts in the testimony should be resolved in favor of the plaintiff, except where he as a witness in his own behalf is self-contradictory, and that he should also be given the benefit of all inferences in support of his contentions of fact which can be legitimately drawn from the evidence; and in discussing with counsel his reasons for refusing to sustain such a motion, the judge may, without necessarily violating the provisions of section 4334 of the Civil Code, refer to the evidence and say what it establishes, or would be sufficient to establish. In doing so, however, he should deal in hypothesis and not in absolute statement; for it is by far the better practice that a judge should abstain from using, in the hearing of a jury, any expression calculated to impress them as to what his own opinion may be with respect to the truth of any disputed issue.

Argued February 14, — Decided March 1, 1900.

Action on insurance policy. Before Judge Norwood. City court of Savannah. May 25, 1899.

*Denmark, Adams & Freeman,* for Continental Insurance Company. *Barrow & Osborne,* contra.

COBB, J. Wickham sued the Continental Insurance Company upon a policy of fire insurance, and recovered a judgment. The defendant made a motion for a new trial, which was overruled, and it excepted.

1. When the case was called in this court a motion was made to dismiss the writ of error, on the ground that there was not contained in the transcript of the record certified by the clerk of the trial court a copy of the judgment overruling the motion for a new trial. The reply to this motion was that there was embodied in the bill of exceptions a verbatim copy of the order overruling the motion. The question, therefore, for decision is whether the judge has authority to certify to a fact transpiring in the trial before him which is a matter of record on the minutes of the court. It is contended by counsel for defendant in error that there is a clear line to be drawn between the power of the judge to certify to what occurs on the trial and the power of the clerk — that the judge has no power to go into the domain

·of the clerk, and that the clerk has no power to enter the domain of the judge.    The contention is that whatever is matter of record in the clerk's office can be authenticated in no other way than by the certificate of the clerk, who is the custodian of the record; that the judge is authorized to certify only to those facts which are not of record and the existence of which depends entirely upon his recollection.   The position of counsel for defendant in error, according to the strict rules which formerly governed in such matters, is undoubtedly sound.   We do not think, however, that at the present time the rule which he invokes is still of force.    When the legislature passed the act of 1889 (Civil ·Code, § 5528 et seq.), declaring how cases should be brought to this court, it was the intention of that body to provide a method which would result in eliminating from records and bills of exceptions all immaterial parts of the record in the court below, and in abbreviating such parts of the record as were transmitted, wherever it could be done consistently; the purpose of the act being to provide for a record and bill of exceptions containing such matters only as were necessary to enable this court to pass intelligently upon the assignments of error made therein. Under that act, this court in its investigation of the case was limited to those parts of the record specified by the plaintiff in error, or such as might be brought up under order of the judge either upon his own motion or upon application of the defendant in error when the latter was of opinion that the record specified in the bill of exceptions was not all that was necessary to a proper determination of the questions involved.   The act of 1892 (Civil Code, § 5536) went one step further than this, and provided that whenever it appeared to this court that any part of the record in the court below, which was not specified by the plaintiff in error or brought up under order of the judge, was necessary to a decision of the case, this court of its own motion should pass an order directing the clerk of the court below to transmit certified copies of such parts of the record as were necessary.   The act of 1893 (Civil Code, § 5569) went still one step further, and provided that no case should be dismissed in this ·court for a want of technical conformity to any of the statutes regulating the manner in which cases should be brought to this

court, whenever there was enough in the bill of exceptions and . the transcript of the record to enable the court to decide the questions involved in the case.   Two things are evident when we consider the various provisions of the law relating to the method to be followed in bringing cases to this court; first, that it is contemplated that the bill of exceptions and record shall contain whatever is necessary to a decision of the questions involved,. in as abbreviated a form as the nature of the case will admit of; and second, that this court shall not dismiss any case where the bill of exceptions and transcript of the record, either as originally brought or as supplemented by proper orders of this court,. contain sufficient information in reference to the trial of the case to enable the court to properly determine the questions raised by the bill of exceptions.   If by a simple statement in the bill of exceptions a certified copy of a long record may be eliminated, that is not only permissible but it is to be desired.   To illustrate: If a suit is brought upon a policy of insurance and the defense does not depend at all upon the sufficiency of the petition or of any stipulation in the policy, a mere statement in the bill of exceptions that the plaintiff sued the defendant upon a policy of insurance would be permissible in lieu of a specification requiring the clerk to transmit a certified copy of the petition and the exhibit thereto attached.   If the defendant in error is not satisfied with this brief statement in regard to the case, he has a remedy under the act of 1889, above referred to, where it is provided that he may make application to the judge to require the clerk to send up such parts of the record as he deems material and which the plaintiff in error has failed to specify.   Certainly in a case like the present, where the order which could have properly come up in the record is copied in the bill of exceptions, it would be no ground to dismiss the writ of error because the plaintiff in error has seen proper to have the fact that the motion for a new trial was overruled authenticated by the official certificate of the judge rather than that of the clerk.   That the contrary view was taken by this court prior to the passage of the act of 1889 is undoubtedly true, as was shown by the decisions cited by counsel for defendant in error; but we think that since the passage of that act those cases are not con-

trolling. See *Burkhalter* v. *Oliver*, 88 *Ga.* 473; *Ahrens Mfg. Co.* v. *Patton Sash Co.*, 94 *Ga.* 247.

2. The policy sued on contained a stipulation, that if there should be a loss the same should "not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required." It appears that there was an appraisal had according to the terms of the policy, and that the suit was brought within less than sixty days from the date of such appraisal. The defendant contends that the suit was prematurely brought. To this the reply of the plaintiff is that the defendant, through its duly authorized agent, after the appraisement, absolutely refused to pay the loss, thus, in effect, denying all liability on the policy, and that for this reason the defendant had waived the benefit of the stipulation in the policy above referred to. It is to be determined, therefore, whether an absolute refusal by an insurer to pay, which would amount to a denial of all liability on the policy, would be a waiver of the right to insist upon a stipulation of the character above quoted. In *Merritt* v. *Insurance Company,* 55 *Ga.* 103, it was held: "An absolute refusal to pay by an insurance company is a waiver of the sixty days time from proof of death, reserved by the policy, within which to make payment." This decision was rendered by only two Judges, and practically no argument is made in the opinion to support the conclusion stated in the headnote above quoted. No other decision of this court bearing directly on the question now under consideration was cited in the argument, and we have in our investigations been unable to find any. Our attention was called by counsel to the reasoning of Judge Walker in the case of *Jackson* v. *Insurance Company,* 36 *Ga.* 429. The ruling in that case was, that when a policy of life-insurance contained a stipulation that a loss thereunder was payable "within sixty days after due notice and proof of the death" of the assured, it was incumbent upon the plaintiff in a suit upon the policy to allege and make proof of such notice and death as conditions precedent to a recovery. Such being the sole question involved in the case, any language of the judge delivering the

opinion must be read in the light of this fact.   But even were it otherwise, the decision is not one which is binding upon this court, as it was rendered by only two Judges.   The question now under consideration may, therefore, be dealt with as if it were an open one in this State, as we are not bound by the decision in the 55 *Ga.,* unless we are satisfied that the correct rule to be followed in such cases is laid down therein.   The stipulation referred to is placed in the policy for the benefit of the insurer, and it is therefore within his power to waive the benefit which he thus has under the contract.   The amount due to the insured becomes fixed when the award has been duly made by appraisers in the manner provided in the contract.   The liability of the company, so far as amount is concerned, is at this time definitely ascertained, and nothing remains to be done, if the company intends to comply with the contract, except to provide the money and pay the demand at the end of the period of sixty days.   When the company says that it will not pay the amount fixed by the appraisers, either at the end of sixty days or at any other time, it in effect denies all liability on the contract, seeks to repudiate its undertaking after the amount of its liability, if any, has been ascertained, and thus waives the benefit of all stipulations in the policy which are placed therein for its benefit; and such conduct gives the insured the right at once to maintain a suit setting up that the company is liable upon the policy for a loss incurred thereunder.

Mr. Joyce in his work on Insurance thus states the rule: "If the insurer denies liability under the policy and refuses to pay the amount of loss claimed, the provision that no suit can be brought upon the policy until a certain time after loss or after proofs are furnished is thereby waived, and the right of action upon the policy accrues immediately upon such refusal."   4 Joyce, Ins. § 3211.   In 13 Am. & Eng. Enc. L. (2d ed.) 374, 375, after the general rule is stated to be, that the loss is not payable until the expiration of the time allowed by the policy after proofs for investigation and preparation, and that until that period has run the loss is not "due and payable," and no action can be maintained, it is further stated: "In many cases, however, either by reason of facts amounting to waiver of this

requirement or by reason of facts rendering it impossible of ascertainment, the loss may be payable and suit may be brought therefor at an earlier date. This period being allowed for the advantage of the insurer, to permit investigation and preparation for payment, the right to insist thereon may obviously be waived. Any acts or conduct dispensing therewith or showing an intention to dispense therewith will have such effect. This is particularly true of a refusal to pay or denial of liability, since, if the insurer does not intend to pay or is not liable, time for investigation or preparation is not necessary." The proposition, that an absolute refusal to pay amounting to a denial of liability on a contract of insurance is a waiver of a stipulation of the character above referred to, seems to be upheld by an unbroken line of American authorities, as will be seen by reference to the following cases: Cobb v. Insurance Company, 11 Kan. 93; Columbian Ins. Co. v. Catlett, 12 Wheat. 383, 392; Western Home Ins. Co. v. Richardson, 40 Neb. 1; Home Fire Ins. Co. v. Fallon, 63 N. W. (Neb.) 860; Star Union Lumber Co. v. Finney, 52 N. W. (Neb.) 1113 (5); California Ins. Co. v. Gracey, 15 Col. 70, s. c. 22 Am. St. Rep. 376; Massell v. Ins. Co., 35 Atl. Rep. (R. I.) 209; Hand v. Ins. Co., 59 N. W. Rep. (Minn.) 538; Whitten v. Ins. Co., 43 N. E. Rep. (Mass.) 121; Commercial Fire Ins. Co. v. Allen, 80 Ala. 571; Ætna Ins. Co. v. MaGuire, 51 Ill. 342; Williamsburg Ins. Co. v. Cary, 83 Ill. 453 (6); Phillips v. Ins. Co., 14 Mo. 220 (4); Landis v. Ins. Co., 56 Mo. 591; Norwich Trans. Co. v. Ins. Co., 34 Conn. 561; Allegre v. Ins. Co., 6 Harris & J (Md.) 408; President and Directors Baltimore Ins. Co. v. Boudinot, 20 Md. 20; Hoffecker v. Ins. Co., 5 Houst. (Del.) 101; Cascade Ins. Co. v. Journal Pub. Co., 1 Wash. (State), 452; State Ins. Co. v. Maackens, 38 N. J. L. 564; Georgia Home Ins. Co. v. Jacobs, 56 Tex. 366; Patrick v. Ins. Co., 43 N. H. 621; German Ins. Co. v. Gibson, 53 Ark. 494; Norwich Trans. Co. v. Ins. Co., 6 Blatch. C. C. 241. If there is any decision to the contrary decided either by the courts of this country or of England, we have not been able to find it. The cases decided by the Supreme Court of Iowa, which apparently rule to the contrary, will be found upon examination to have been founded upon a

statute which declared that no action could be maintained until after the expiration of the time therein mentioned. See Quinn *v.* Ins. Co., 33 N. W. Rep. 130; Vore *v.* Ins. Co., 41 N. W. Rep. 309; Blood *v.* Ins. Co., 69 N. W. Rep. 1141.

It was earnestly insisted by counsel in the present case that, as a denial of liability on a promissory note would not cause the same to mature before the time fixed in the contract, upon principle a denial of liability upon a contract of insurance would not cause the same to mature before the time fixed in a stipulation of the character under consideration. A complete answer to this contention is contained in the opinion of Mr. Justice Brewer (now Associate Justice of the Supreme Court of the United States) in the case of Cobb *v.* Insurance Company, cited supra. He uses this language: "Counsel seeks to parallel this with the case of a promissory note, and asks if, in case the company had given a note payable in sixty days, an action thereon in thirty days would not have been premature, even though the company, subsequently to the execution of the note, denied all liability thereon. The parallel is not good. The latter is wholly a unilateral contract, with rights and liabilities fixed and determined, and without anything for adjustment, and without occasion for act or waiver by either party. To change the liability requires a new promise, not a denial or waiver.

It was contended by counsel for plaintiff in error, that as section 2108 of the Civil Code provided that an absolute refusal by the insurer to pay was a waiver of the notice and preliminary proofs which the contract called for, no other result than this would flow from such absolute refusal, the provision of the code being exhaustive of the subject. In order to maintain this contention it must appear from the terms of the law that it was the intention of the lawmaking body that its declaration should be exhaustive. It is hardly to be presumed that the legislature, in adopting those provisions in the code relating to the law of insurance, intended that what is therein contained should be exhaustive of the law on that subject. What is there said is controlling so far as it goes, but a rule deducible from the general principles of the law of insurance, not necessarily in con-

flict with those provisions, would still be of force notwithstanding the adoption of the code. The section under consideration simply says that an absolute refusal to pay waives certain things. There is nothing in the language of the section indicating that it was the intention of the legislature that such a refusal should not waive other things. At the time the code was adopted (1863) it was probably the well-settled law, that an absolute refusal to pay amounted to a waiver of notice and preliminary proofs of loss, but the effect of such a refusal upon stipulations of the character under consideration in the present case was not so well settled, and therefore the General Assembly left the same to be determined by the courts upon principle.

The next question to be considered is whether the record shows that there was an absolute refusal to pay or a denial of liability by one who was at the time of the refusal or denial in such a position that his statements would bind the company, that is to say, by one who was the authorized agent of the company. It appears from the record that the insured had a conversation over the telephone with a man named Pelton, who was the adjuster for the defendant company. In reference to this conversation the plaintiff testified as follows: "I told him I received his letter that morning, where they had figured the loss $798.66, awarded me that. He says, you don't understand it. I did not award you any $798.66, that's simply the figures of the umpire and the adjuster. I said, well, sir, how much are you going to give me ? He said, I am not going to give you anything. I said, I will simply have to find a way to make you do it, and I slammed up the 'phone. I did not want to have any further conversation with him." The record shows that Pelton was adjuster and special agent for the defendant; that his business was to adjust losses under its policies; and that he went to Savannah for the purpose of adjusting the loss which the plaintiff sustained. From these facts it would seem to be clear that it was the duty of Pelton to determine what was the liability of the company growing out of the fire, and to ascertain in accordance with the terms of the policy the amount to be paid thereon. If he had authority to fix the amount of liability, then he had authority to declare that there was no liability, and the

company would be bound by such a declaration by him.   See
*Liverpool Ins. Co.* v. *Ellington,* 94 *Ga.* 785 ; *Clay* v. *Ins. Co.,* 97
*Ga.* 44 ; *Phenix Ins. Co.* v. *Searles,* 100 *Ga.* 97.   But it is urged
that the language of Pelton did not amount to a refusal to pay.
The conversation was about the loss and about the claim of the
insured for indemnity.   The insured had no claim ·on Pelton
individually.   He was talking with him as the representative
of the company, and, giving his language a reasonable construc-
tion, it certainly authorized, if indeed it did not require, a find-
ing that he denied all liability on the policy on the part of the
company which he represented.   To hold otherwise would be
indeed straining the language.

3. Several of the grounds of the motion for a new trial as-
sign error upon the conduct of the presiding judge in giving
expression to his opinion of the evidence in the presence of the
jury when he overruled a motion for a nonsuit.   It is claimed
that a new trial should be granted under the provisions of sec-
tion 4334 of the Civil Code, which declares that it is error for
the judge in any case "during its progress, or in his charge to
the jury, to express or intimate his opinion as to what has or has
not been proved."   It is impossible for a judge to pass upon a
motion for a nonsuit without to some extent intimating or ex-
pressing an opinion as to what has been proved.   · A mere state-
ment by him, that the motion is overruled, is an expression of
the opinion that the plaintiff has made out a prima facie case.
It has been held in several cases that this statute does not gen-
erally apply to the conduct of the judge when passing upon such
a motion.   We find nothing in the language of the judge which
is complained of which is so objectionable as to require the
granting of a new trial in the present case.   See, in this con-
nection, the opinion of Mr. Justice Lewis in *Florida Central &
Peninsular Railroad Company* v. *Lucas,* this day rendered, and
the cases there cited.   But, with all due respect to the able and
learned judge whose decision is under review, we can not re-
frain from saying that it is by far the better practice that all
motions for nonsuit should, whenever practicable, be heard and
determined in the absence of the jury, and that if for any reason
this course is impracticable, the judge in delivering his deci-

sion should deal with the evidence hypothetically, and abstain, as far as possible, from using any expression which would be calculated to impress the jury with what his own opinion might be with respect to the value or weight of any particular evidence in the case.

The charge as a whole fairly submitted to the jury the issues raised by the pleadings. The portions alleged to be erroneous, read in the light of the entire charge and of the evidence, were free from substantial error. The evidence authorized the verdict, and no error has been brought to our attention which in our opinion required the granting of a new trial.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concurring.*