26926.   INDUSTRIAL LIFE AND HEALTH INSURANCE
COMPANY *v.* WINN.

DECIDED DECEMBER 5, 1938.   REHEARING DENIED DECEMBER 20, 1938.

*McElreath, Scott, Duckworth & DuVall,* for plaintiff in error.
*A. W. White,* contra.

MacIntyre, J. ■ Under the general grounds plaintiff in error raises the question as to whether there was an absolute refusal to pay or a denial of liability by one who was, at the time of the refusal or denial, in such a position that his statements would bind the company; in other words, one who was the authorized agent of the company. It is true that if by the terms of the policy, as therein provided, "no agent has the power, on behalf of the company, to waive any forfeiture or to bind the company by making any promises, or making or receiving any representations or information," the notice by an agent, who represents the company in receiving applications for insurance, in collecting premiums, and in issuing policies, of a refusal to pay the loss would not bind the company as a waiver on its behalf of the contractual duty to furnish the proofs of loss called for by the terms of the contract of insurance. However, if an absolute refusal to pay is made by an adjuster or an agent who has authority to represent the company in determining whether or not the policy should be paid, the rule would be otherwise. *Williams* v. *Atlas Assurance Co.,* 22 *Ga. App.* 661 (97 S. E. 91). See also *Continental Insurance Co.* v. *Wickham,* 110 *Ga.* 129, 135 (35 S. E. 287). In the instant case, James E. Garst, attorney representing the plaintiff, testified that he went to the office of the company and told "them what I came for and I

was referred to Woodall," and that he (Garst) talked to Mr. Woodall who refused "to pay me all of it, the same man that appears here [in court] as representing the company." We are of the opinion, nothing to the contrary appearing, that the jury was authorized to find that Garst went to the home office of the defendant company in Atlanta (the company having agreed to pay at its home office in Atlanta), to collect the insurance, and that Woodall was the agent of the company representing it in determining whether or not payments should be made on policies. This being so, Woodall's refusal to pay the plaintiff's attorney the insurance money amounted to a waiver of proof of loss. See, in this connection, *Travelers Ins. Co.* v. *Sanders,* 47 *Ga. App.* 327 (170 S. E. 387) ; *Phenix Ins. Co.* v. *Searles,* 100 *Ga.* 97 (4) (27 S. E. 779). The cases of *Frye* v. *Continental Life Ins. Co.,* 43 *Ga. App.* 849 (160 S. E. 544), *American Nat. Ins. Co.* v. *Anderson,* 42 *Ga. App.* 624 (157 S. E. 112), *McLeod* v. *Travelers Ins. Co.,* 8 *Ga. App.* 765 (70 S. E. 157), *New Zealand Fire Ins. Co.* v. *Brewer,* 29 *Ga. App.* 773 (116 S. E. 922), and *Goldman* v. *Ætna Ins. Co.,* 30 *Ga. App.* 715 (119 S. E. 338), cited by plaintiff in error, are distinguishable from the instant case. There is no merit in this ground.

It is further contended in the general grounds that none of the terms of the policy could be waived except by the president and the secretary of the company, and that the evidence on behalf of the plaintiff showed that mere insurance agents were the only parties with whom she communicated, that if waiver was made it was by these agents, and that therefore the plaintiff did not carry the burden of showing that the parties who were authorized in the policy to waive its provisions did actually waive the one calling for proof of loss, nor did she show that the company, by its conduct, had waived the provision, or had authorized the alleged agents to waive it. Citing *Bailey* v. *First National Fire Ins. Co.,* 18 *Ga. App.* 213 (89 S. E. 80), and *National Fire Ins. Co.* v. *Thompson,* 51 *Ga. App.* 625 (181 S. E. 101).

A clause in a policy of insurance prohibiting waiver by any agent, and prohibiting certain named acts except by the president or the secretary, is to be construed as referring to those provisions which may be properly designated as conditions; and has no reference to those stipulations which are to be performed after the loss has accrued, such as furnishing proof of loss. These may be expressly

waived by a refusal to pay, or by other acts of an authorized agent by which the beneficiary is led to believe that the insurer does not intend compliance therewith. *Life Ins. Co. of Va.* v. *Williams,* 48 *Ga. App.* 10, 20 (172 S. E. 101) ; *Royal Exchange Assurance of London* v. *Franklin,* 158 *Ga.* 644 (124 S. E. 172, 38 A. L. R. 626) ; *Barkley* v. *American National Ins. Co.,* 36 *Ga. App.* 447 (136 S. E. 803). The instant case is distinguishable from the two cases cited by plaintiff in error. The waiver in *National Fire Insurance Co.* v. *Thompson,* supra, was of a condition existing when the policy was issued, and the agent of the company was, because of the stipulation (similar to the one in the instant case) in the application, acting beyond the apparent scope of his authority and such waiver was not binding on the company. In *Bailey* v. *First National Fire Ins. Co.,* supra, there was no allegation that the person to whom the proof of loss was delivered was the person authorized to receive it, and the petition was held subject to general demurrer. In the present case the evidence warranted a finding that an authorized agent had waived a stipulation which was to be performed after the loss accrued, and such waiver was binding on the company; at least the company would be bound by an estoppel in pais. For these reasons the instant case is distinguishable from those cases cited by plaintiff in error. This ground is not meritorious.

■ Special ground 1 complains of the court's charge to the jury that "One provision in this policy is this: 'No obligation is assumed by the company unless on said date,' meaning June 15, 1936, 'the insured is alive and in sound health,'" and contends that the court should have charged the entire clause which is that "no obligation is assumed by the company for any disease contracted prior to the date hereof, nor unless on said date insured is alive and in sound health." Construing the terms of the policy most strongly against the insurer, we interpret the clause "any disease contracted prior to the date hereof, nor unless on said date insured is alive and in sound health," to mean any disease which had been contracted and which had manifested itself on or before the date of the issuance of the policy. In construing contracts of insurance like that now before us if we should say that there could be no recovery by the insured if a disease was merely contracted on or before the date of the policy, there would be scarcely any limit to its nullifying influence. The word "disease," as used in policies

of the present character, refers to some ailment or disorder of a somewhat established and settled character which conveys the impression of a morbid condition,—one that has manifested itself and is obviously apparent. Meyer *v.* Fidelity & Casualty Co., 96 Iowa, 378 (65 N. W. 328, 59 Am. St. R. 374) ; *National Life & Accident Ins. Co.* v. *Lee,* 46 *Ga. App.* 4 (166 S. E. 253). Couch's Cyc. Ins. Law, 2975, § 885 (g) ; *National Life & Accident Ins. Co.* v. *Smith,* 34 *Ga. App.* 242 (129 S. E. 113) ; *National Life & Accident Ins. Co.* v. *Martin,* 35 *Ga. App.* 1 (132 S. E. 120).

Special ground 1 further complains of the instruction to the jury as to the meaning of "sound health" which was as follows: "Therefore it becomes important for you to know what in law is meant by 'sound health' as applied to this case. I charge you that the term 'sound health' used in a policy and as applicable in this case, means the applicant, that is the insured, has no grave impairment or serious disease, and he is free from any ailment that seriously affects the general soundness and healthfulness of the system. Under this definition, sound health consists not alone in the outward appearance of sound health, but also a reasonable freedom from physical derangement and impairment as above defined." The definition of "sound health" as here given was both essential and correct, for it is in the language of this court and the Supreme Court, and has been quoted in numerous cases as being a proper definition of "sound health." See *National Life & Accident Ins. Co.* v. *Smith,* supra; *Atlantic & Birmingham R. Co.* v. *Douglas,* 119 *Ga.* 658 (2) (46 S. E. 867) ; *National Life & Accident Ins. Co.* v. *Martin,* supra. There is no merit in this ground.

■ Special ground 2 complains of the admission of the testimony of James E. Garst that "I went to the office of the defendant to see about collecting this insurance and talked to Mr. Woodall, the same man that appears here as representing the company. He refused to pay me all of it; he says sufficient proofs of loss had been furnished, that was not the cause of nonpayment. This paper was in possession of Woodall who give me his reasons for not paying. I don't think I knew Wardlaw [Woodall?] before I went up there, but I knew of him. I went to the office of the company and told them what I came for, and I was referred to Woodall and I made an engagement with him and filled the engagement," and further contends that the court erred in overruling the following

objection to the admission of the evidence interposed at the time the evidence was offered: "Mr. Duckworth: 'I move to exclude the other conversation he says he had with Woodall, on the ground that it does not show Woodall was an agent, under the provisions in the policy sued on, who could make the waiver alleged to have been made in his testimony. I move to exclude all testimony of Mr. Garst with reference to what Woodall said for the reason his testimony was to the effect that Woodall told him at the time that he was limited in authority and would have to confer with higher officers of the company, and the policy shows that a man of that type can not waive the policies here in evidence, and shows who can do it.'" We think the objection is without merit. The logical inference from this testimony is that Woodall was an agent authorized to pay claims against the company and therefore had power to waive the stipulation requiring proof of loss.

■ Another special ground complains that the court erred in refusing to give the following charge to the jury: "I charge you under the evidence the presumption is that insured's death was caused by advanced pellagra." Merely because a fact may be established by the evidence, to wit, that the death of the insured resulted from advanced pellagra, no presumption to that effect was created, and the trial judge did not err in refusing to so charge. This ground is likewise not meritorious.

■ The court did not err in affirming the judgment overruling the motion for new trial.

*Judgment affirmed. Guerry, J., concurs. Broyles, C. J., dissents.*

ON MOTION FOR REHEARING.

MacIntyre, J. On motion for rehearing, part 1 of the original opinion has been amended as it appears in the above form.

*Rehearing denied. Guerry, J., concurs. Broyles, C. J., dissents.*