### 42437. HERMITAGE HEALTH & LIFE INSURANCE COMPANY v. BAGGS, Executrix.

ARGUED NOVEMBER 7, 1966—DECIDED JANUARY 18, 1967—
REHEARING DENIED FEBRUARY 3, 1967.

*Fulcher, Fulcher, Hagler, Harper & Reed, J. Walker Harper,* for appellant.

140

*Cumming, Nixon, Eve, Waller & Capers, John D. Capers, William B. Warlick,* for appellee.

QUILLIAN, Judge. ■ The policy of insurance sued on is a limited policy providing certain hospital and surgical coverage for "cancer." In order to come within the coverage the cancer must commence after the issuance of the policy. Cancer is described in the policy as "a disease characterized by the growth of a malignant tumor consisting of uncontrolled growth or spread of cells, the invasion of the connective tissue, or leukemia or Hodgkin's disease, which is positively diagnosed, by a legally qualified pathologist by microscopic examination, which commences after 12:00 o'clock noon on the effective date of the policy. . ." Assuming that the proper construction of this clause of the policy requires that the cancer commence after 12 noon on the effective date of the policy, yet where an examination of the insured, and particularly that area of his body where cancer is later discovered, is made after the effective date of the policy and no diagnosis of cancer is made but a diagnosis of a fractured rib and pneumonitis is made and where still later another examination reveals a condition not present on the first examination and which new condition later, after microscopic examination is diagnosed as cancer, it cannot be said that a finding is demanded that the cancer commenced prior to the effective date of the policy.

The evidence as to the insured's physical condition prior to and after the effective date of the policy was not without contradiction, but, construing the evidence in support of the verdict, the jury was authorized to find that the "cancer" had not commenced prior to the effective date of the policy. There was no evidence of the existence of disease "characterized by the growth of malignant tumor consisting of uncontrolled growth in spread of cells, the invasion of connective tissue, or leukemia or Hodgkin's disease" prior to the effective date of the policy, although one physician, basing his opinion upon the clinical history given him by the insured, expressed the opinion that the cancer commenced some two or three months prior to the effective date of the policy. This same physician however testified that there were no recognizable symptoms prior to the effective date of the

policy and that based upon the x-rays made in January, 1964, he would have diagnosed the insured's condition as pneumonitis rather than as lung cancer.

In *Ga. Life & Health Ins. Co. v. Gammage,* 91 Ga. App. 125, 130 (85 SE2d 85), the following language applicable to the present case was quoted from *National Life &c. Ins. Co. v. Martin,* 35 Ga. App. 1, 4 (132 SE 120): "The cause or causes of death are ofttimes as subtle and obscure as any fact which relates to the life of man. It is rarely as simple a proposition as the verdict of a coroner's inquest. Rather is it true, as some philosopher has said, that all life carries within itself the germ of its own dissolution,—that to live is to begin to die." The *Gammage* case, dealing with a reoccurrence of a previous disease, then held: "To permit the insurer to defeat recovery by showing that a death was not insured because it resulted from what was, when the policy was issued, an incipient and unknown disease, although it may have 'originated' in a technical sense at some time previous to the date of the policy, would be to allow the insurer to frustrate the bona fide expectations of the insured, who, having reason to believe that he was free of disease when the policy was issued, would expect that any disease causing his death would be one originating later and so within the coverage of the policy. The insurer in the present case, although contending for such a construction of its policy, sought to prove that the disease 'originated,' in the sense that it was known and manifest to the insured, before the policy was issued, and submitted medical opinion that the disease continued and resulted in the insured's death. However, the jury was authorized to believe that the insured had recovered from such disease because he was in good health when the policy was issued."

The medical testimony shown above, when taken together with the other medical testimony adduced, showed that the medical profession does not know the cause of cancer although it does know much about the treatment of it, that cancer may be present in the system of a person for years before it begins to spread, or it may spread immediately upon developing in a person's system, and that it is not medically possible to determine exactly when cancer starts.

When a policy of insurance is written to cover such a dread disease, without examination, and without a definite date for coverage to begin based upon diagnosis after such date, but rather is based upon the date the disease commences, when the time such a disease commenced cannot be established by medical science as being present on a particular date prior thereto even after it is established that the disease is then present, the proper construction of such a contract is that held in *Industrial Life &c. Ins. Co. v. Winn,* 59 Ga. App. 289, 295 (200 SE 452), that the disease must be "of a somewhat established and settled character which conveys the impression of a morbid condition,— one that has manifested itself as obviously apparent." As pointed out in the case of *Reserve Life Ins. Co. v. Peavy,* 94 Ga. App. 31, 34 (93 SE2d 580), evidence that a person "was in good health, free of disease, and as well as ever he had been, and was making no complaints" is evidence that no disease existed at that time. The evidence in the case sub judice authorized the finding that the "cancer" commenced after the effective date of the policy. Accordingly, the trial court did not err in overruling the defendant's motion for summary judgment, which in effect showed the same factual situation as the evidence on the trial of the case, or in giving and failing to give the charges complained of in enumerations of error numbered 4, 5, 6, and 7.

■ Under the decision in *Interstate Life &c. Ins. Co. v. Williamson,* 110 Ga. App. 557 (139 SE2d 429), the trial court erred in submitting the question of "bad faith" as defined by *Code Ann.* § 56-1206 since the testimony of the physician who testified for the defendant showed facts which, if believed, would have shown that the cancer manifested itself prior to the effective date of the policy. Therefore unless the penalty and attorney fees are written off a new trial will be necessary.

■ The eighth enumeration of error contends that the court erred in admitting several exhibits consisting of letters and other documents. The court instructed the jury to consider the exhibits only in regard to the question of bad faith. This instruction limited this evidence to the particular purpose for which it was admitted and the jury was bound to consider the exhibits for the restricted purpose. *Central of Ga. R. Co. v.*

*Brown,* 138 Ga. 107, 115 (74 SE 839). In view of the court's instructions and the holding in the second division of this opinion the admission of evidence was not harmful.

The judgment of the trial court is affirmed on condition that the penalty and attorney fees be written off within ten days after the remittitur is made the judgment of the trial court, otherwise reversed.

*Judgment affirmed on condition. Hall and Deen, JJ., concur.*