## ATLANTIC AND BIRMINGHAM RAILROAD COMPANY
### *v.* DOUGLAS.

1. In applications for continuance on the ground of surprise resulting from an amendment to pleadings, the party claiming surprise must make oath, or his counsel state in his place, " that such surprise is not claimed for the purpose of delay."
2. " Good health " is a relative term, and does not mean absolute freedom from physical infirmity, but only such a condition of body and mind as that one may discharge the ordinary duties of life without serious strain upon the vital powers.
3. It follows from the foregoing that when, in a suit by a female against a railroad company for damages for personal injuries, it is alleged that the plaintiff was, prior to the injuries, " in good health," a recovery may be had notwithstanding it appears from the evidence that at the time of the injuries the plaintiff was laboring under an infirmity of which she was ignorant, and which did not interfere with the discharge by her of the ordinary duties of life, and that the result of the negligence of the railroad company was, not to produce an infirmity, but simply to aggravate the existing infirmity.
4. There was no error in any of the rulings complained of, which required the granting of a new trial.    The verdict, though large, was authorized by the evidence, and the discretion of the trial judge in refusing a new trial will not be interfered with.

Argued February 17, — Decided March 4, 1904.

Action for damages.    Before C. T. Roan, judge pro hac vice. City court of Douglas.    July 8, 1903.

To the statement of facts appearing in the opinion it may be added that the negligence charged was, in requiring the plaintiff, who, as a passenger on the defendant's train, had reached her destination, to alight at an unusual and dangerous place, about sixty yards from the depot, where the ground was about thirty-three inches from the bottom step of the coach, and was hardened and sunken ; and in the failure of the conductor to afford proper assistance to the plaintiff as she was alighting.    The testimony was conflicting ; but the following appears in the testimony of the plaintiff :    The coach stopped about sixty steps the other side of the depot platform.    The conductor came to her and told her to

come on. "I got up and went on, and got out on the second step of the coach, and he gave me his right hand, and I leaned forward expecting him to give me his other hand, but he never did, and I was then so far gone that I could not catch hold of the hand railing with my other hand, and I had to jump with my whole weight on the hard dirt. I had no footstool to step on. . . He had always before helped me off, but the time in question he did not help me; he did not offer me his other hand at all. When he failed to reach for me with the other hand, the reason I did not stop and not get off was because I was so far gone that I could not catch back on the steps. He did not give me any assistance with the other hand, and very lightly touched my hand with his right hand. He was physically able to help me down off the steps without injury. If I had known he was not going to help me off, I would have gotten off myself and not bothered with him. . . I struck right down in a ditch; struck on both feet right down just that way. I went down almost to my knees. The condition of the premises at the place where I struck was a ditch. . . I struck the hard portion of the ground in the ditch. . . From my best judgment it was thirty-three inches from the bottom step of the coach to the bottom of the ditch where I struck. I do not intend to be accurate about the distance, as I never measured it; but I think it is about that far. . . He stood right below the steps and reached his hand, and I reached mine, and he lightly touched my hand with one of his. He took my right hand, but his one hand was not any help to me. I had nothing in my hand. . . The reason I did not step off was because it was too far to step; left the bottom step with both feet and jumped off."

*J. L. Sweat* and *W. W. McDonald*, for the railroad company.
*Toomer & Reynolds* and *Leon A. Wilson*, contra.

COBB, J. Mrs. Douglas, a married woman, sued the railroad company for $10,000 damages, and recovered a verdict for $5,-500. The railroad company assigns error upon the refusal of the judge to grant it a new trial.

1. Pending the trial the plaintiff amended her petition. Counsel for the defendant, claiming that the amendment was material, stated that he was surprised by the same, and moved to continue the case. The court refused this motion, and this is one of the

errors assigned. Even if the motion for a continuance was sufficient in all other respects, it was lacking in one essential particular: counsel did not state in his place, or have any one representing the company to make oath, that the surprise was not claimed for the purpose of delay. The code distinctly provides that in all applications for continuance, upon the ground of surprise resulting from an amendment to the pleadings, the opposite party shall make oath, or his counsel shall state in his place, "that such surprise is not claimed for the purpose of delay." Civil Code, § 5128. Counsel for the plaintiff in error contends here that under the facts disclosed by the record it was necessarily to be inferred that the application was not made for delay only. The code does not leave this matter to inference; there must be an express statement to the effect that delay is not the purpose of the application; and in the absence of such express statement a judgment refusing to continue the case will not be reversed.

2–3. The judge charged the jury that "a tort to health already impaired is redressed by giving damages both for further impairment and for any obstruction occasioned by the tort to recovery from existing disease. Wrongfully to cause or aggravate or protract illness is an injury to health; but, as I have charged you, this is a matter entirely for you to consider under the evidence and charge of the court." Error is assigned upon this charge, for the reason that there were no allegations in the petition which authorized the charge or authorized a recovery under the rule embodied in the charge, and because the same was not authorized by the evidence. The latter objection is not well taken, as there was evidence upon which this charge could have been properly based. Whether or not, under the petition, the theory of the case presented by the charge was properly involved in the case is the question to be determined. To determine this it is necessary to ascertain what is meant by the phrase "good health;" for the petition describes the condition of the plaintiff before the injuries by averring simply that at the time of the injuries she was forty-one years of age, weighed 105 pounds, and was "in good health." The plaintiff testified that up to the time of the injuries her health had been very good, and that she had been able to attend to all of her household duties. Medical experts who had made a careful examination of the person of the plaintiff, especially of

the internal organs claimed to have been affected by the jump from the train which it was alleged caused the injuries complained of, testified that plaintiff had been afflicted with an infirmity of long standing, and that the jump from the train was not the sole cause of her loss of health and the suffering she endured, but that these were the result simply of an aggravation of the existing infirmity, brought about by her leaping from the train. As to the condition of the plaintiff as disclosed by the examination of the medical experts there was practically no dispute, and this reference to the evidence in dealing with a question arising under the pleadings is made simply for the purpose of showing that it is possible for a person to be in what is generally called " good health " and still be laboring under an infirmity of which he may be unconscious. The testimony of the plaintiff that she was in good health and in such health that she could perform all of the onerous duties of the household was undisputed. The testimony of the medical experts, that she was at this time laboring under a physical infirmity which would make an accident to her more serious than if she had been free from infirmity, was also uncontradicted. Is the statement that a person is in " good health " to be treated, at all times and under all circumstances and conditions, as importing that the person is absolutely sound physically ? If being in good health means being absolutely free from physical infirmity, then there are few persons who can be properly considered as in good health, and fewer still if subjected to the scrutiny of the medical expert who has license to make an examination extending to matters both external and internal. " Good health " is a relative term, and means such a condition of body and mind that the ordinary affairs of life may be attended to without serious strain upon the vital powers. In life-insurance cases it has been held that "good health" does not ordinarily mean freedom from infirmity, and that "good health" or "sound health" means a state of health free from disease or ailment that affects the general soundness and healthfulness of the system seriously. Manhattan Life Insurance Co. *v.* Carter, 82 Fed. 986 ; Seiverts *v.* Benefit Assn. (Iowa), 64 N. W. 671. See also, in this connection, *Mass. Ben. Assn.* v. *Robinson,* 104 *Ga.* 257 (10), 289. When the plaintiff alleged, therefore, that she was in " good health," her petition is not to be

construed as alleging that she was perfectly sound and free from all infirmities; and, consequently, when under the evidence it appeared that she was laboring under an infirmity of which she was ignorant, but this infirmity did not interfere with the discharge by her of the ordinary duties of life, and probably would not have ever interfered with her but for the injuries resulting from the negligence of the railroad company, she was not precluded from recovering simply because it developed that the injuries to her were the result, not of the negligence of the company alone, but of that negligence and a pre-existing infirmity which up to that time had not been the occasion of any inconvenience to her.

4. The foregoing deals with all of the special grounds of the motion that require discussion at length.    Even if there was any error in admitting the evidence complained of, at the time of its admission, there was an amendment to the petition, subsequently allowed, which had the effect of curing the error.    The other charges complained of were not erroneous.    It remains only to consider whether the evidence authorized a finding for the plaintiff; and if so, whether the amount of the verdict was excessive. An elaborate discussion of the evidence would not be profitable. It is sufficient to say that there was evidence from which a jury could find that the defendant was negligent, and that the consequences of this negligence to the plaintiff were serious in their nature; that she had not only already suffered greatly in body and mind, but that such suffering would probably continue for years to come, even if not throughout her whole life.    In other words, taking the case most favorably for the plaintiff, there was evidence from which the jury could find that the railroad company had not exercised that degree of diligence which the law required it to exercise toward a passenger when about to alight from one of its trains, and that the consequences resulting to the plaintiff from this negligence were serious in the extreme.    The verdict is apparently large, but the case is one in which mental anguish and physical pain already suffered, as well as that which is to come in the future, are to be measured; and under our system, the jurors are those upon whom the law imposes the duty of filling the measure which is to be delivered to the injured party, and this court has neither the inclination nor the desire to usurp

the functions of the jury in these matters.   This verdict has met
with the approval of the trial judge, and we are not prepared to
say that the amount is so large as to suggest the existence of
bias or prejudice.    The discretion of the trial judge in allowing
the verdict to stand will not be interfered with.

*Judgment on the main bill of exceptions affirmed; cross-bill
dismissed.    All the Justices concur, except Simmons, C. J., absent.*