# CASES

### DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

#### AT THE

## OCTOBER TERM, 1925

16509. NATIONAL LIFE AND ACCIDENT INSURANCE CO. *v.* MARTIN.

1. "Although the unattached application could not be admitted for the purpose of showing a breach of the contract, since it forms no part of the contract, still, where the defense is that the policy was fraudulently procured by reason of false and fraudulent representations material to the risk, the application is admissible, not as a part of the contract, and not for the purpose of showing that the policy was void under the contract, but to show that it was fraudulently procured." *Couch* v. *National Life & Accident Ins. Co.*, 34 Ga. App. 543 (130 S. E. 596).

2. In a suit on such a policy, where the proof failed to show that it was procured by false and fraudulent representations of the insured, and where the evidence was such as to warrant the conclusion that the policy was applied for and accepted in good faith, the court did not err in refusing to instruct the jury that where the policy provides that no liability was assumed by the company prior to its date, nor unless on said date the assured was alive and in sound health, the plaintiff could not recover, if it appear that at the time the policy was issued the assured was suffering with a disease which subsequently caused his death, whether or not the assured was then conscious of bad health or knew that he was so afflicted. Under the recent ruling of this court in *National Life & Accident Ins. Co.* v. *Smith*, 34 Ga. App. 242 (129 S. E. 113), the term "sound health," when thus used in a policy of insurance, is to be taken as meaning the enjoyment of "such health and strengt‛ ˙ to justify the reasonable belief that [the insured] is free

Life Insurance, 37 C. J. p. 404, n. 41 New; p. 405, n. 45 New, 46, 47 New; p. 456, n. 01; p. 627, n. 28 New; p. 629, n. 48; p. 651, n. 71; p. 652, n. 75; p. 653, n. 83.

1

from derangement of organic functions, or free from symptoms calculated to cause reasonable apprehension of such derangement, and [that] to ordinary observation and to outward appearance her health is reasonably such that she may with ordinary safety be insured and upon ordinary terms, the requirement of good health is satisfied. . . The term 'sound health,' used in a policy, means that the applicant has no grave impairment or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system;" citing Joyce on Insurance (2d ed.), § 2004; *Atlantic & Birmingham R. Co.* v. *Douglas*, 119 *Ga.* 658 (2), 661 (46 S. E. 867). See also *Massachusetts Benefit L. Asso.* v. *Robinson*, 104 *Ga.* 256, 257 (10), 289 (30 S. E. 918); *Waters* v. *Supreme Conclave Knights of Damon*, 105 *Ga.* 151 (2) (31 S. E. 155). Thus, where the assured represents in good faith that he is in sound health, and, on the strength of such representation and upon the opinion of its agent, the policy is issued, and is in good faith accepted by the assured, the policy will not be avoided by reason of the fact that he might have been then afflicted with an incipient, unknown, and fatal malady which had not at that time manifested itself or in any way deranged, impaired, or affected the general soundness and healthfulness of the system.

DECIDED JANUARY 16, 1926. REHEARING DENIED FEBRUARY 13, 1926.

Complaint; from city court of Richmond county—Judge Black. May 4, 1925.

Application for certiorari was denied by the Supreme Court.

*A. R. Williamson, Pierce Brothers*, for plaintiff in error.

*James S. Bussey Jr.*, contra.

JENKINS, P. J.   The basis of the contract lay in the representation of the applicant and the opinion thus formed and otherwise arrived at by the insurer.   The provision in the contract that no liability is assumed by the company prior to the date of the policy or unless the assured shall be at that time in life and in sound health would seem to be intended to cover such changes and exigencies as might arise after the application and medical examination or certificate of the agent and the time when the policy is issued.   In Modern Woodmen of America v. Atkinson, 153 Ky. 527 (155 S. W. 1135), it was held that "A condition in a life insurance policy that it shall not be binding upon the insurer unless on the date of its delivery the insured was in sound health applies only to unsoundness of health arising after the application and medical examination, in which case the insurer must rely alone on the statements in the application to avoid a recovery, and is unavailable as a defense unless it is shown that the insured's disease developed between his application and the time when the policy was delivered."   In Priest v. Kansas City Life Ins. Co., 116

.Kan. 421 (227 Pac. 538), the Supreme Court of Kansas held as follows: "The effect of a clause that a life insurance policy shall not take effect unless the applicant is in good health at the time of its delivery is to protect the company against a new element of risk through a change in the applicant's condition arising after the company's investigation has been made." In the latter case a quotation from Fairfield v. Union Life Ins. Co., 196 Ill. App. 7, 15, is made as follows: "The record herein shows that a period of time elapsed between the date of the application and the medical examination above referred to, and the delivery of the policies. It is fair to presume that this situation arises in almost every instance where the defendant issues a policy. In that interim the insured may have become seriously ill or suffered a severe injury greatly impairing his health. It is therefore fair to presume that the provision that said policy 'shall not take effect until the first premium has actually been paid to and accepted by the company . and the policy delivered to and accepted by the insured while in good health,' was intended to safeguard the defendant against any contingencies that might arise during such interim." Numerous other citations are given by the Kansas court to sustain this interpretation.

In the instant case the medical testimony upon which the defendant relies is to the effect that the incipient disease which is alleged to have ultimately occasioned the death must have been in existence for from five to fifteen years prior to the issuance of the policy. Under this interpretation of this provision of the contract, and in the absence of fraud in the procurement of the policy, it would be unnecessary to determine what the rule would be as laid down in the second headnote, since the infirmity did not arise during the interval between the application and the issuance of the policy, and since the representation of the assured as to soundness of his health was not attached to the policy so as to form a part thereof. While we have discussed the question just dealt with in the opinion, and are inclined to agree with the soundness of the rule as here outlined, we do not so decide, but rest our judgment on the rule laid down in the second headnote, following the *Smith* case. The basis of this decision is that a policy applied for and accepted in good faith can not be avoided by proof that the malady which ultimately occasioned the death must have existed in some

incipient form prior to the issuance of the policy, but unknowingly and without at that time manifesting any symptoms or effect, or in any way causing reasonable apprehension of any impairment or derangement of the system, even though, by an acceptance of the contract, the assured may have warranted himself to be in sound health. To hold otherwise would involve far-reaching consequences to those who have been led to rely upon the protection of policies which have been applied for, issued, and accepted in good faith. To permit the insurer, upon the death of the insured, to go back of and behind the bona fide contract and set up its invalidity on account of some unknown and unmanifested disease, which from its nature and customary course must have been existent in some incipient form, although its existence was in no way manifest by any symptoms or effect, and despite the fact that the assured was at the time in the actual enjoyment of good health, would be to render doubtful and uncertain the protection afforded by every policy of life insurance, unless, perchance, it might contain other and independent provisions limiting the time of contestability. For example, in the instant case the medical testimony indicates that the disease must have originated at a period dating from five to fifteen years prior to the contract of insurance. The cause or causes of death are ofttimes as subtle and obscure as any fact which relates to the life of man. It is rarely as simple a proposition as the verdict of a coroner's inquest. Rather is it true, as some philosopher has said, that all life carries within itself the germ of its own dissolution,—that to live is to begin to die. *Judgment affirmed. Stephens and Bell, JJ., concur.*