. 20948.   METROPOLITAN LIFE INSURANCE CO. *v.*
McALEER, administrator.

Decided July 14, 1931.   Rehearing denied September 4, 1931.

*William L. Clay,* for plaintiff in error.

*Spence M. Grayson, H. Mercer Jordan,* contra.

Luke, J.   Henry McAleer, as administrator of the estate of Perry .J. Hernandez, brought suit against the Metropolitan Life Insurance Company on a life-insurance policy which provided that in consideration of weekly premiums of twenty-five cents each the company would, upon satisfactory proofs of death, pay the executor or administrator of deceased $456.00.   The 7th paragraph of plaintiff's petition is as follows:   "Petitioner shows that at the instance of an agent of said defendant, a Mr. Miller and a Mr. Henderson called upon the said Perry J. Hernandez, and insisted upon him taking out additional insurance with the defendant, whereupon Mr. Hernandez stated that he had been sick and had only recently returned from the hospital and was attended by Dr. M. J. Egan, and did not think he could obtain insurance.   Mr. Miller, whose given name is unknown to petitioner but [who] was an agent of said company, assured Mr. Hernandez that when a policy issued by the company [was] for less than $500, that it was not necessary to have a medical examination; and the fact that he had been sick would be no ground to refuse issuing him a policy."   The defendant company moved to strike this paragraph, and demurred to the petition and particularly to this paragraph, on the ground that the

matters alleged therein are not a part of the contract of insurance, and seek to alter the terms of a written contract. The court overruled the demurrer, and the defendant excepted pendente lite to the ruling, and in its bill of exceptions, assigns error on the exceptions pendente lite. On the trial a verdict and judgment were rendered in favor of plaintiff for the full amount sued for. Defendant made a motion for a new trial, which was overruled; and on this ruling the defendant assigns error.

It is admitted that at the time of the death of the said Perry J. Hernandez all premiums due on the policy were paid. Mrs. Laura Hernandez, wife of the assured, testified in part as follows: "Mr. Hernandez said he couldn't stand a medical examination. They [the agents of defendant] said the policy was under $500, he didn't need any medical examination. That is what they told him. Thereafter he signed his name. He told them what his trouble had been, kidney trouble and heart trouble. . . I saw him sign his name to this application. When my husband signed his name there wasn't nothing written above it, not a word. Nothing at all. I can not tell you when the writing above his signature on Part A of the application was put there. I was there all the time when the agents were there. . . Mr. Miller knew Mr. Hernandez's condition, so did Mr. Henderson. Mr. Miller knew exactly when Mr. Hernandez went to the hospital, and also when he came back. . . At the time my husband signed that application there was nothing written up, and he made no statement, except that he wasn't in physical condition. Not only Mr. Miller, but Mr. Henderson knew that he had been in a hospital. Both knew when he had been there for heart trouble and kidney trouble. . . Mr. Hernandez put the agents on notice that [he] had heart trouble and kidney trouble. I heard Mr. Hernandez make that statement to them. . . The agents knew when he went to the hospital, because they came there to collect premiums [deceased had previous insurance with same company] while he was there. . . He had that conversation about the heart and kidneys the day that they came to ask for the insurance; but the day when the application was brought out, there was no questions asked, only that he signed his name. . . Well, he had heart trouble and the agents both knew it. . . He told them, and they knew it besides. He said, 'I can't stand a medical examination.' They

said, 'We will take care of that part of it. Just let us write the insurance. We will take care of the rest.'"

The contention of the defendant company is, in substance, that the policy of insurance was the entire contract; that parol evidence as to representations of the agents to the assured was not admissible to vary the terms of the written contract; and that under the terms of the contract it was void because of false representations in the application, made by the assured as to his health. The plaintiff contends, in substance, that the application for insurance which the assured signed and which the agent of the defendant company wrote was given because the agents, to induce assured to take the policy, represented to him that no medical examination was necessary when the insurance was for less than $500; that said application was not a part of the contract of insurance (which is admitted in the brief of plaintiff in error), and that parol evidence as to the inducement offered by the agents to the assured to get him to sign the application is admissible; that the agents of the defendant company knew of assured's state of health; and that their knowledge was imputable to the defendant company. Briefly stated, the controlling issue is this: When an agent of an insurance company has knowledge that the insured is sick and has been sick with a serious disease a few months prior to the issuance of the policy of insurance, and it further appears that the application is *not a part of the policy,* and all premiums are paid at the time of the death of the assured, is the insurance company liable under the policy?

In the case of *Rome Insurance Co.* v. *Thomas,* 11 *Ga. App.* 539 (75 S. E. 894), "there was sharp conflict in the testimony as to whether the agent had notice at the time he took the policy that the insured had pellagra." This, of course, was a question for the jury. The 3rd and 4th headnotes in that case are as follows: "As to all matters affecting conditions precedent to a contract of insurance, *the knowledge of the agent of the insurance company is imputed to the company,* and the company is thereby charged with notice of any facts affecting the risk about to be assumed, which may have come to or rest in the knowledge of its agent, and which good faith in the discharge of his duty as agent would require him to disclose to his principal. If, before or at the time of execution of the contract of insurance, the insurance company's agent who

procured the contract had notice that the assured was not in good health, but on the contrary was suffering from an incurable disease, and nevertheless the policy was issued and delivered, and the premium accepted thereon, the insurer will be presumed to have waived a condition avoiding the policy in the event of ill health of the assured at the time of its delivery, and will be estopped from setting up that provision of the policy in defense to an action upon the contract of insurance." And in the opinion it was said: *"It is now well settled that knowledge of material facts on the part of an agent of an insurance company is notice to the company,* and if, with this notice, the company issues a policy, it is estopped in equity from deriving a benefit from any stipulation in the policy which might have availed it if it had been ignorant of the facts. This rule is especially to be upheld in that form of insurance known as 'industrial insurance,' for the reason that it operates largely among and principally affects that portion of our population who pay for the protection which life insurance affords out of the weekly earnings derived from their labor, and who are in many instances easily imposed upon by the statements of agents." (Italics ours.) See also *Fair* v. *Metropolitan Life Ins. Co.,* 5 *Ga. App.* 708 (63 S. E. 812); *Life & Casualty Ins. Co.* v. *Burkett,* 38 *Ga. App.* 328 (3) (144 S. E. 29); *National Life & Accident Ins. Co.* v. *Sneed,* 40 *Ga. App.* 131 (3) (149 S. E. 68). Since it is undisputed in the instant case that the agent prepared the application for insurance which the assured signed, and it is alleged that the application contained untrue statements as to the health of the insured, and there was evidence to the effect that the agent of the defendant company knew that the statements were untrue, the 2d paragraph also of the decision in the *Sneed* case last above cited applies to the facts of the instant case, it being there held that "Where soliciting and forwarding applications for policies of insurance were within the scope of the duties of an agent of an insurance company, and such agent undertook to prepare for another an application of insurance and wilfully inserted therein a false answer to a material question, he will be regarded in so doing *as the agent of the company and not of the applicant, and the agent's knowledge of the falsity of the answer will be imputed to the company."* (Italics ours.)

The special grounds of the motion for a new trial show no

cause for a reversal of the judgment of the trial court. Whether the issuance of the policy and acceptance of the premiums by the company after notice of the condition of the health of the insured works an estoppel or constitutes a waiver of certain terms of avoidance in the policy, the effect would be the same under the facts of the instant case. "Forfeitures stipulated in contracts of insurance are not favored, and, in order to avoid a forfeiture, the courts will seize any circumstance indicating an intention to waive it," and it will be held to be waived where "some one authorized to represent the insurer had actual knowledge of the fact or circumstance upon which the waiver depended." *Wiley* v. *Rome Ins. Co.*, 12 *Ga. App.* 186 (76 S. E. 1067). And such waiver would be effective regardless of a provision in the policy "that no condition of the policy could be changed or any forfeiture waived except in writing signed by the president or secretary of the company." *Fair* v. *Metropolitan Life Ins. Co.*, supra.

The court did not err in overruling the demurrer to the petition, or the demurrer to the 7th paragraph thereof, or in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*