## 23951. INTERSTATE LIFE & ACCIDENT INSURANCE CO. v. McMAHON.

DECIDED FEBRUARY 9, 1935.

*J. A. McFarland,* for plaintiff in error.

*R. Carter Pittman, Mitchell & Mitchell,* contra.

PER CURIAM. This was a suit upon a life-insurance policy, in which verdict and judgment were rendered for the plaintiff, and the defendant assigned error on the overruling of its motion for a new trial. The application for the insurance was made on September 6, 1932. It was not incorporated in and made a part of the policy actually issued as a result of the application. At the time of the application the premium for four weeks was paid in advance. In the receipt for this premium, signed by the agent taking the application, there was this proviso: "If the application is accepted and a policy issued, this sum will be applied toward payment of the premium thereon. If application is rejected the amount will be returned to the applicant. No obligation is incurred by said company by reason of this deposit, unless and until a policy is issued upon said application, and unless at the date of delivery of said policy the life proposed is alive and in sound health, *except*

that if the life proposed is now in sound health and the amount paid by the applicant at the time the application is written is not less than four weekly premiums and this receipt, detached from the original application, covering such payments, is surrendered to the company, the company agrees, if the application is approved by the Home Office in Chattanooga, Tennessee, that should death occur prior to the delivery of this policy, it will nevertheless pay such amounts as would have been due under the policy if issued. No obligation is assumed by the company unless the application is so approved and the life proposed is now in sound health." The policy, issued on September 19th, provided that "This policy shall not take effect unless on the date of delivery hereof the insured is alive and in sound health." The evidence for the plaintiff was that the insured had been ill with child-birth on July 10th preceding, but was in sound health on September 6th, the date of the application for the insurance. The evidence further showed that the agent for the insurer was told at the time of the taking of the application that the applicant "was very nervous," but was strong and able to do house work at the time. The agent remarked that "lots of people were nervous," and certified in the application that the risk was good. Two witnesses for the plaintiff testified that the insured was in as good health when the policy was delivered as when the application was taken. The testimony of the doctor introduced by the defendant was that the insured was suffering from a failure of her uterus to contract after the birth of her baby in July. He visited her on September 15, and again on the 18th. She was taken with a cold about five days before her death on September 29, and pneumonia developed three days before her death. The failure of her uterus to contract caused her to become nervous and possibly affected her mentally. This was a curable condition in most cases. This trouble from her uterus caused a mental and physical condition which, added to the seriousness of the pneumonia, was the immediate cause of her death. The condition from her uterus caused a weakened condition which made her more susceptible to pneumonia.

It is undisputed that the defendant's agent had notice of the physical condition of the insured at the time of the taking of the application. No medical examination was required, and the insured was apparently a good risk. In the case of *Life & Casualty*

*Co. of Tenn.* v. *Palmer,* 48 *Ga. App.* 380 (2) (172 S. E. 823), it was said: "Where a receipt is given to an applicant for insurance by a local agent of a life insurance company, for the first premium upon a policy of insurance, and the money is forwarded to the home office of the company, and it is there accepted as the first payment upon the policy, and the policy is issued and forwarded to the local agent for delivery to the insured, the contract of insurance becomes effective upon the acceptance of the premium by the company and the issuance of the policy, notwithstanding the policy by its terms takes effect at a later date." An examination of the record in that case will disclose that it had the same provisions as the present policy as to its not becoming effective unless at the date of delivery the applicant was in sound health. There is no question as to the delivery of the policy in the present case. The questions presented are: Was the applicant in sound health on September 6th and on September 19th, and, if not in sound health on those dates, was the defendant company actually acquainted with her condition and did it thus waive any unsoundness as to health with which she may have been suffering.

It is unquestionably true that where the application itself does not limit the authority of the agent, or where the application is not attached to and made a part of the policy, actual notice to the agent of the applicant's condition will be notice to the company, and where a policy is issued and delivered the insurer will be held, in the absence of fraud, to have waived a condition avoiding the policy in the event of the ill health of the assured at the time of the delivery. *Metropolitan Life Ins. Co.* v. *Hale,* 177 *Ga.* 632 (170 S. E. 875); *Metropolitan Life Ins. Co.* v. *McAleer,* 43 *Ga. App.* 669 (159 S. E. 906). Knowledge of material facts on the part of an agent of a company under such circumstances is notice to the company. In Priest *v.* Kansas City Life Insurance Co., 116 Kan. 421 (227 Pac. 538), it was said: "The effect of a clause that a life-insurance policy shall not take effect unless the applicant is in good health at the time of its delivery is to protect the company against a new element of risk arising through a change in the applicant's condition after investigation is made." In *National Life & Accident Insurance Co.* v. *Martin,* 35 *Ga. App.* 1 (132 S. E. 120), it was said: "Where the assured represents in good faith that he is in sound health, and on the strength of such repre-

sentation and upon the opinion of its agent the policy is issued, and in good faith accepted by the assured, the policy will not be avoided by reason of the fact that he might have been then afflicted with an incipient, unknown, and fatal malady, which had not at that time manifested itself or in any way deranged or affected the general soundness and healthfulness of the system." "Sound health" was defined in *National Life & Accident Insurance Co.* v. *Smith,* 34 *Ga. App.* 242 (129 S. E. 113), as follows: "The terms 'sound health' or 'good health,' used in a policy, mean that the applicant has no grave impairment or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system." A bad cold may be the forerunner of pneumonia, a headache the first symptom of a deadly malady, and yet a bad cold or a headache is not necessarily a condition of unsound health. A woman after childbirth may be suffering with a derangement which is strictly temporary and normally curable, as it was testified the applicant's condition was in the present case, and yet thereby she may be made more susceptible to other diseases. In the present case the weakened condition of the applicant, brought on by the nervous condition caused by an enlarged uterus after childbirth, was a contributing cause which made the applicant more susceptible to the pneumonia which caused her death. The company through its agent, according to the evidence, had notice of this condition. See *Metropolitan Life Ins. Co.* v. *McAleer,* supra; *Mechanics & Traders Ins. Co.* v. *Mutual Real Estate &c. Asso.,* 98 *Ga.* 262 (25 S. E. 457); *Metropolitan Life Ins. Co.* v. *Hale,* supra. The provision in the present policy that it shall not take effect unless on date of delivery the insured is in sound health refers to a change in health between the time of the 'taking of the application and the date of delivery. In Modern Woodmen of America *v.* Atkinson, 153 Ky. 527 (155 S. W. 1135), it was said: "A condition in a life insurance policy that it shall not be binding upon the insurer unless on the date of delivery the insured was in sound health, applies only to sound health arising after application and medical examination, in which case the insurer must rely alone on the statement in the application to avoid a recovery, and is unavailable as a defense unless it is shown that insured's disease developed between his application and the time when his policy was delivered." See also *Winder National Bank*

v. *Ætna Life Ins. Co.*, 36 *Ga. App.* 703 (2) (137 S. E. 848);
*National Life Ins. Co.* v. *Martin,* supra; Fairfield *v.* Union Life
Ins. Co., 196 Ill. App. 7. The jury were warranted in finding, un-
der the facts of the present case, that the insurer had actual knowl-
edge of the condition of the applicant at the time of the application
and at the time of delivery, and such knowledge waived a condition
in the policy that ill health, if any, at the time of delivery of the
policy avoided the policy.

The credibility of witnesses is peculiarly within the province of
the jury, and the jury were warranted in finding from the plain
testimony of plaintiff and another witness (Mrs. Dempsey) that
the applicant was in sound health on the day of application, and
in the same condition of health on the day of delivery of the policy.
The alleged unsound health was a nervous condition, caused by an
enlarged uterus, which condition did not cause the death of the in-
sured; but, according to medical testimony, was a contributing
cause to the pneumonia which did cause death. It appears also,
under the terms of the receipt issued by the insurer, that the in-
sured was protected if in sound health on September 6th, whenever
the application was approved by the home office, even if death
should occur prior to the delivery of the policy. It would be rea-
sonable to say that if liability in the present case attached when the
application was approved, dependent alone on the condition of the
health of applicant on September 6th, the other provisions in the
policy actually issued became nugatory which restricted such lia-
bility to a condition existing at a later date, although the applica-
tion was approved and the policy issued and delivered.

The evidence authorized the verdict for the plaintiff; none of
the grounds of the motion for a new trial show cause for a reversal
of the judgment; and the court did not err in overruling the mo-
tion for a new trial.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur. Broy-
les, C. J., dissents.*

BROYLES, C. J., dissenting. This was a suit brought upon a
policy of life-insurance by the beneficiary named in the policy.
The policy contained the following provision: "This policy shall
not take effect unless on the date and delivery hereof the insured
is alive *and in sound health.*" (Italics mine.) The plaintiff hav-
ing alleged in her petition that the insured was in sound health on

September 19, 1932, and that allegation having been denied in the defendant's answer, it was incumbent on the plaintiff to affirmatively prove that the insured was in sound health on September 19, 1932, the evidence showing that the policy was delivered on that date. The only evidence tending to establish that vital contention of the plaintiff was her own testimony, and since she was a party to the case and her testimony was self-contradictory, vague, and equivocal, it should have been construed most strongly against her (*W. & A. R. Co.* v. *Evans,* 96 *Ga.* 481, 23 S. E. 494; *L. & N. R. Co.* v. *Lusk,* 37 *Ga. App.* 99, 139 S. E. 89; *Clark* v. *W. & A. R. Co.,* 41 *Ga. App.* 317 (4), 152 S. E. 847); and when so construed (there being no other evidence to support her contention, and the evidence for the defendant clearly and unequivocally showing that the insured was not in sound health on September 19, 1932—the date of the delivery of the policy), there was no issue of fact raised as to the state of the health of the insured on the date of the delivery of the policy, and a finding in favor of the defendant was demanded. It follows that the verdict for the plaintiff was contrary to law and the evidence, and the court erred in refusing to grant a new trial.