32756. GULF LIFE INSURANCE COMPANY *v.* GRIFFIN.

Decided January 13, 1950.

*Tindall & Tindall, J. F. Kemp, P. S. Ringel,* for plaintiff in error.

*Colon J. Cogdell,* contra.

Sutton, C. J. This was a suit on an insurance policy by Lonnie Griffin, the beneficiary, against the Gulf Life Insurance Company, to recover the face value of the policy, $550, and interest. The insured was Jacquelyn Griffin, the 12½-year-old daughter of the plaintiff. The application for the insurance was made by the plaintiff, on August 6, 1946, the policy was dated August 19, 1946, and the insured died on September 18, 1946.

The policy contained the following provision: "This policy shall not take effect unless on the date and delivery hereof the insured is alive and in sound health."

The insurance company in its answer denied liability, and alleged: (1) that the policy was void and never did take effect

for that the insured was not in sound health on the date the policy was·delivered: (2) that the policy of insurance was procured by fraud and deceit for that at the time the plaintiff signed the application for the insurance he wilfully, intentionally, and fraudulently failed to disclose to the defendant that his daughter, the insured, was suffering with a fatal malady known as chronic nephritis, and that he made material representations to the effect that his daughter had never had any disease of the kidneys or bladder and that she was in good health.

After the submission of evidence by both parties, the jury returned a verdict for the plaintiff for the amount of the policy. The defendant made a motion for a new trial on the general grounds and one special ground. The motion was overruled and the defendant excepted.

There was evidence to the effect that Jacquelyn Griffin, the insured, was treated for kidney trouble by Dr. Collier over a period of some two months in the fall of 1943; that she was then discharged by the doctor as cured and she went to school and lived the life of a normal child of that age and appeared to be healthy and all right until the time she was taken sick again, along about September 13, 1946; that she had a tonsillectomy in 1943, but soon recovered from that; that E. B. Taylor, agent for the defendant company, went to the plaintiff's home, on August 6, 1946, and solicited additional insurance from the plaintiff and the members of his family; at that time the plaintiff, his wife, daughter Jacquelyn, and a younger child each had a policy with the defendant company, and on that date, upon the urgent solicitation of said Taylor, the plaintiff made applications for four additional policies for $550 each, for himself and each member of his family, as above stated, the policy here sued on insuring Jacquelyn Griffin being one of these, and the plaintiff and his wife at that time told said insurance agent that Jacquelyn was treated for kidney trouble by Dr. Collier in 1943, and also told him of the operation removing her tonsils and that she recovered from these troubles and seemed to be all right; and that they told the insurance agent all they knew about Jacquelyn with respect to her kidney and tonsil troubles. Mrs. Louise Davis was present when the application for the insurance was made and testified that the

plaintiff and his wife told the insurance agent that Jacquelyn was treated for kidney trouble in 1943, and about her tonsillectomy in 1943; and she further testified that she had known Jacquelyn for the past three years and that she had been in school continuously during that time and seemed to'be in good health until the time she became ill just a few days before her death. The plaintiff testified that the insured's last illness occurred after the policy was issued and delivered. Mrs. Griffin testified that she did not remember about this, and she thought it was in September, 1946, before they got the policy, that Dr. Collier was called to treat her. The policy was dated August 19, 1946, but the evidence failed to show on what date it was delivered.

Dr. Thomas W. Collier testified to the effect that he treated Jacquelyn Griffin for kidney trouble in the latter part of September, 1943, when she was nine years old, and placed her on a diet of vitamins and cod-liver oil and gave her injections and sulfa and her urine cleared up and was all right, and she returned to school about the first of December, 1943; that the next time he saw her was on September 13, 1946, and she had been vomiting; that she was carried to the hospital on September 16, at which time convulsions were first noted, and she died of acute nephritis on September 18, 1946; that nephritis is a disease characterized by faulty functioning of the kidneys that any child might have; that children frequently have acute flare-ups of hemorrhagic nephritis due to the tonsils or other infections, and they may make a complete recovery; you do not know which patients will or will not make complete recovery; it may be acute and then go into the chronic stage, which is progressive; that he did not see Jacquelyn Griffin from 1943 until September, 1946, but gave it as his opinion that there was a continuation of her illness from 1943 into 1946.

There was other testimony, but for the purpose of this decision it is not necessary to refer to it in detail.

The proof of death certificate by Dr. Collier contained this statement, among other things, "Date of first treatment and last illness—September 16, 1946. . . Immediate cause of death —chronic nephritis."

The following stipulation was made by counsel for the parties:

"Mr. Kemp: Your Honor, for the record we admit without proof that the premiums have been paid and that the policy was in force at the time, except, of course, for the defense which we make, that is, that it was procured by fraud. Mr. Cogdell: That's right, and it is further stipulated that the defendant company has tendered the amount of the premium paid, with interest, back to the plaintiff; that the premiums and interest have been tendered into court."

It was contended by the defendant company, the plaintiff in error here, that the policy sued on was procured by fraud and deceit on the part of the plaintiff in that he wilfully and fraudulently failed to disclose to the defendant that his daughter, Jacquelyn, was suffering with a fatal malady known as chronic nephritis at the time he made the application for the insurance policy and that he made material misrepresentations at that time to the effect that his daughter had never had kidney trouble and was in good health at the time. The evidence in the case was directed at and dealt with the issue of fraud in the procurement of the policy. An examination of the evidence and the stipulation made by counsel for the insurance company will show that this was the main issue in the case; and the trial judge in his charge submitted this issue fully and fairly to the jury. The jury returned a verdict in favor of the plaintiff. The insurance company does not argue or insist on the general grounds of its motion for a new trial; but contends "the court erred in failing to charge the jury that if they should find from the evidence submitted that the insured was not in sound health at the time the policy was delivered, then and in that event, the plaintiff would not be entitled to recover." There was no request so to charge the jury. But movant avers that said charge was pertinent and applicable to the facts in the case and that evidence was adduced which would have authorized the jury to find that the insured was not in sound health at the time the policy was delivered.

The condition in the policy of insurance, that "This policy shall not take effect unless on the date and delivery hereof the insured is alive and in sound health," refers to a change in the condition of the applicant's health between the time of taking the application for insurance and the date of the issuance

and delivery of the policy, and is unavailable as a defense unless it is shown that the insured's disease developed during that period. The term "sound health" used in such a policy has been defined to mean that the applicant is free from any ailment that seriously affects the general soundness and healthfulness of the system, that the insured enjoys such health and strength as to justify the reasonable belief that he is free from derangement of organic functions, and to ordinary observation and to outward appearance his health is reasonably such that he may with ordinary safety be insured upon ordinary terms. See *Interstate Life & Accident Ins. Co.* v. *McMahon,* 50 *Ga. App.* 543 (179 S. E. 132); *National Life & Accident Ins. Co.* v. *Williams,* 53 *Ga. App.* 677 (187 S. E. 145); *Fowler* v. *Liberty Natl. Life Ins. Co.,* 73 *Ga. App.* 765 (1) (38 S. E. 2d, 60); *National Life & Accident Ins. Co.* v. *Martin,* 35 *Ga. App.* 1 (132 S. E. 120).

The defendant based its defense on the theory that the policy was procured by false and fraudulent representations to the effect that the insured was in good health at the time the application for the policy was made, whereas in fact she was suffering with a serious kidney ailment at that time and that this condition continued to exist until her death. The jury found against the defendant on this issue.

Under the facts of this case and the law applicable thereto the trial judge did not err in failing to charge the jury as complained of in the special ground of the motion.

*Judgment affirmed. Worrill, J., concurs. Felton, J., concurs in the judgment.*