## 35212. NATIONAL LIFE & ACCIDENT INSURANCE COMPANY *v.* STRICKLAND.

DECIDED OCTOBER 25, 1954.

*Wm. F. Buchanan, Newell Edenfield, John E. Rogers, Lamar Sizemore,* for plaintiff in error.

*J. Walter LeCraw, John H. Hudson,* contra.

QUILLIAN, J. We shall in the opinion refer to the plaintiff in

error as the company, or the defendant; to the defendant in error as the plaintiff; and to Mrs. Strickland as the applicant or the insured—according to which of such terms is most appropriate to the context in which it is used.

The only ground of the general grounds of the motion for new trial insisted upon here is that the verdict rendered in favor of the plaintiff was without evidence to support it. The particular insistence of the defendant is that the verdict is not supported by evidence because: 1st. The application for the insurance, the receipt for the first premium and the policy itself contained a provision: "This policy shall take effect on the date of issue, provided the insured is then alive and in good health, but not otherwise." 2nd. The evidence showed that the insured was not in good health when the policy was delivered, because the evidence showed that on occasions shortly before and some year before the application was made or the policy was delivered the insured had suffered with hypertension. However, the evidence did not show whether the hypertension from which she suffered was chronic, or whether she suffered from it at the time the policy was delivered. The evidence did show that high blood pressure might or might not persist from the first paroxysm caused by it. In these circumstances the mere proof that the insured's blood pressure was high on previous occasions, even though it appeared that she died of the same ailment a few months after the policy was issued does not conclusively prove that it existed at the time the policy was issued. The testimony of Dr. Betty Scharter was that after a paroxysm of high blood pressure a patient without treatment might or might not get over it without medical treatment. Dr. Phillip Russell, a witness for the plaintiff testified: "The cause of the disease is unknown. The course and duration is extremely variable." Therefore, we cannot hold that the evidence demanded a finding that the insured, Mrs. Strickland, was not in good health when the policy was delivered or at the time the application was made.

Ground four of the plaintiff in error's motion for new trial complains that the court refused its timely written request to charge the jury: "Gentlemen, the policy of insurance contract sued on in this case provides in the face thereof as follows: 'This policy shall take effect on the date of issue, provided the insured

is then alive and in sound health, but not otherwise.' The policy also provides: 'No agent shall have the power or authority to waive, change or alter any of the terms or conditions of this policy, nor shall it be changed in any manner except by the endorsement signed by the president or secretary.' The insured, Mrs. Merle Beulah Strickland, also agreed in her application, which has been introduced in this case, as follows: 'I understand and agree that only the president or secretary of the company can make, modify or discharge contracts or waive any of the company's rights or requirements, and any such modifications, discharge or waiver shall be in writing over the signature of such officer, and none of these acts can be done by the agent taking this application.' There has also been introduced in evidence by the plaintiff the receipt which was given by J. D. Wills, the agent of the company on September 14, 1952, when Mrs. Strickland made application for this policy, and this receipt provides as follows: 'No obligation is assumed by the company in any event unless the application is approved by the company at its home office in Nashville, Tennessee, and unless the proposed insured is on the above date alive and in sound health.' I charge you that the insured and the beneficiary, Jack T. Strickland, are bound by these provisions in the application and in the receipt and in the policy, and that if you should find that Mrs. Strickland was not in sound health on the date of the application and that she was not in sound health on the date of the issuance of the policy, and that such disease, if you find that she had a disease, seriously affected the soundness and healthfulness of her system, then the beneficiary in this case, who is plaintiff herein, Jack T. Strickland, would not be authorized to recover and you should find for the defendant."

In this case the application was not made a part of the policy.

There was no error in the court's refusal to give the requested instruction to the jury, for the reason that it was not a correct charge of the law applicable to the case. The correct rule is enunciated in several decisions of this court. "The requirement in a policy of insurance, that the insured be in sound health at the date of the issuance of the policy, refers to a change in health between the time of taking the application for insurance and the date of the issuance of the policy, where the policy is

issued without medical examination and without the application for insurance being attached to and made a part of the policy of insurance." *Fowler* v. *Liberty National Life Ins. Co.,* 73 *Ga. App.* 765, 768 (38 S. E. 2d 60).

With much interest we have considered the thought presented by the plaintiff in error that the rule just quoted applies only in cases in which there has been a medical examination. To support its position it brings an opinion of the Supreme Court of Kentucky to our attention. Modern Woodmen of America *v.* Atkinson, 153 Ky. 527 (155 S. W. 1135). In that case the said rule is enunciated as in the holdings of this court above referred to, but the decision is predicated upon the consideration that the insurance company knew from the physical examination of the insured what his health was on the date of the application signed by the applicant in that case, and after having approved his condition as revealed by the report of its own medical examiner, as related to the time of the application, the insurance company should not be allowed to go back of the examination and prove the insured was not in good health when the application was signed, but was confined to proof of unsoundness of the insured's health that did not exist at the time of the examination. The Kentucky decision is cited in one of the several opinions of this State giving full pronouncement to the rule above quoted. However, the Georgia courts have made no distinction between cases in which there was a physical examination of the insured by the insurer's physician, and those in which there was none. Indeed, there is no reason to make any such distinction in applying the rule, for the simple reason that the insurance company can, if it wishes, require an examination in every case as a condition precedent to the issuance of the policy. If it did not do so, it accepts the insured in such condition of health as he is on the date of the application. It is a matter of simple choice of the insurer as to whether he will require a physical examination or waive it. If the latter course is chosen, then the insurer cannot complain that he is deprived of the information that such examination would have afforded as to the insured's physical soundness on the date that he became an applicant for the insurance. In this connection see *Liberty National Life Ins. Co.* v. *Hearing,* 80 *Ga. App.* 81 (55

S. E. 2d 641); *Gulf Life Insurance Co.* v. *Griffin,* 80 *Ga. App.* 730 (57 S. E. 2d 296).

The seventh ground of the motion for a new trial complained that the court charged the jury: "The condition in a policy of insurance that the policy shall not take effect unless, on the date of issue, the insured is alive and in sound health refers to a change in the applicant's health between the time of taking the application for insurance and the date of the issuance and delivery of the policy, and is unavailable as a defense unless it is shown that the insured's disease developed during that interval. In this case I charge you that, if Mrs. Beulah Strickland was in the same condition of health at the time of the issuance and delivery of the policy of insurance that she was at the time of the signing of the application, it would not be a ground for voiding the policy because of the provision that the policy would not take effect unless she was alive and in sound health on the date of issue."

There was, under the holdings of this court in a number of cases, no error in these instructions. *Interstate Life &c. Ins. Co.* v. *McMahon,* 50 *Ga. App.* 543 (179 S. E. 132); *National Life &c. Ins. Co.* v. *Francis,* 53 *Ga. App.* 249 (185 S. E. 366); *National Life &c. Ins. Co.* v. *Williams,* 53 *Ga. App.* 677 (187 S. E. 145); *National Life &c. Ins. Co.* v. *Mullen,* 64 *Ga. App.* 24 (12 S. E. 2d 363).

The sixth ground of the motion for a new trial complains that the court charged the jury: "As to all matters affecting conditions precedent to a contract of insurance, the knowledge of the agent of the insurance company is imputed to the company, and the company is thereby charged with notice of any facts affecting the risk about to be assumed which may have come to or rest in the knowledge of its agent, and which good faith in the discharge of his duty as agent would require him to disclose to his principal. If, before the issuance of the insurance policy, the agent who procured the contract had notice that the insured was not in good health, but on the contrary, was suffering from an incurable disease, but nevertheless the policy was issued and delivered and the premium accepted thereon, the insurer will be presumed to have waived a condition avoiding the policy in the event of ill health of the insured at the time of its delivery

and will be estopped from setting up that provision of the policy in defense of an action upon the contract of insurance."

There was no direct evidence that such condition was incurable when the application was signed by the insured, or at the time the policy was delivered to her. The medical evidence was negative in this regard. Questions were propounded to Dr. Betty Scharter, a witness for the defendant, and her answers were, as follows: "Do people get rid of high blood pressure without medical treatment to remove the underlying cause?" The answer was: "That is difficult to say. A person who has a paroxysm of high blood pressure might get over it one time and not get over it another."

The court, in charging the jury may assume admitted facts or those concerning which there is no dispute, but a charge is error that assumes a fact not admitted or indisputably proven. The charge requested in the instant case assuming the fact that the agent was informed that the insured was not in sound health at the time before the policy was issued, and that she was suffering from an incurable disease was not a correct charge because, while he may have been informed of previous attacks of high blood pressure suffered by her, the evidence was not conclusive, and it was not admitted that she suffered from the disease either at the time the application was made or the policy was issued. The agent did not, according to the evidence, observe any indication that the insured was not in good health. Indeed, the only testimony on this subject in the record was that of the doctor who testified that it was difficult to say whether one suffering from high blood pressure might get rid of it without treatment, and that a person suffering from a paroxysm of high blood pressure might get over it at one time and might not at another.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*