39172.   INTERSTATE LIFE & ACCIDENT
INSURANCE COMPANY v. BALDWIN.

DECIDED JANUARY 10, 1962.

*Henry A. Stewart, Jr.*, for plaintiff in error.

*Glenn T. York, Jr.*, contra.

BELL, Judge. ■ The defendant's contention is that the undisputed evidence showed that its liability was limited to the return of premiums paid because of the following clause in each insurance policy:

"Liability Limited: Unless specifically recited on the application for this Policy, if before the date hereof the Insured has been rejected for insurance by this or any other company, or has been a patient or an inmate of any institution for the treatment of physical or mental disease, or injury, or has undergone any surgical operation, or has been attended by a physician, unless it be shown by the claimant that such institutional, surgical or medical attention was not for a serious condition, then the Company's liability shall be limited to an amount equal to the premium paid hereon. The provisions and limitations of this paragraph are subject to the incontestability clause herein."

The undisputed evidence revealed that the insured, prior to the issuance of the policies, had been treated and hospitalized for an acute coronary thrombosis; that he also had high blood pressure which, in the opinion of the physician, led to the heart attack and was its cause; that he was treated periodically from then on until he died of "this heart attack in September 1957."

The plaintiff's evidence, if accepted by the jury, would have allowed them to find that the agent issuing the policy knew of the heart condition of the insured, and the contention is thus made that the insurer is bound by this knowledge of its agent. The trial court in its charge to the jury charged that if the agent had notice of the situation as contended by the plaintiff, then such knowledge would be imputable to the defendant insurer.

The policies provide: "Preliminary Provision: No obligation is assumed by the Company prior to the date hereof and, subject to the incontestability clause herein, this Policy shall not take effect if the Insured is not alive and in sound health on the date hereof. This Policy contains the entire agreement between the Company and all parties at interest. . . . Its terms cannot be changed nor its conditions varied except by a written agreement signed by an Authorized Officer of the Company. No other person shall have power to make or alter this contract or waive forfeitures."

The plaintiff contends that the foregoing paragraph distinguishes the present cases and, because of a difference in wording of the clause, removes them from the authority of *Life & Casualty Ins. Co. of Tenn. v. Williams,* 200 Ga. 273 (36 SE2d 753, 161 ALR 686). In that case the Supreme Court held that the insurer was not estopped from asserting nonliability, except for the return of premiums paid, under the limitation of insurance clause and non-waiver provisions contained in an industrial life insurance policy, which limited the liability of the company to the return of premiums if the insured was not in sound health upon the issuance and delivery of the policy or if the insured before its date had tuberculosis. There the plaintiff contended the insurer was estopped from asserting non-liability under the limitation of insurance and non-waiver provisions by reason of the knowledge of the soliciting agent that the insured was not in sound health. In the present case a similar contention is asserted by the plaintiff, to the effect that the alleged knowledge of the agent was imputable to the company.

Both the *Williams* case and the present actions were upon industrial life-insurance policies. The plaintiff contends that,

since the applications were not attached to the policies, they did not constitute a part of the policy contracts. Whether this contention is valid or not we do not find it necessary to decide, since the application was not attached to the policy in the *Williams* case. "The fact that . . . the application for insurance was not attached to the policy could not alter the binding effect of the 'limitation of insurance' clause as a valid contractual right in the insurer." Ibid. p. 277.

The plaintiff makes the further contention that the case of *National Life &c. Ins. Co. v. Pollard,* 66 Ga. App. 895 (19 SE2d 557), controls the present actions. In that case, in the application the agent wrote "bronchitis" instead of "bronchiectasis." The insured was six feet one inch tall, and weighed 146 pounds, and the name of the physician who was treating him for bronchiectasis was set forth in the application. There this court found that the company had sufficient information to put it on notice of the true condition of the insured's health, which placed a duty on the company to make some inquiry of the physician. In the present cases there is no evidence to show the company had any knowledge of facts sufficient to put it upon inquiry which would have led to the discovery of the insured's heart condition. The only notice which the company might conceivably be held to have had was that the agent had knowledge, but under the authority of the *Williams* case that knowledge in these cases is not imputable to the company. For the above reason, we regard the *Pollard* case as distinguishable from the present cases. In the absence of this distinction on this point, there would be a conflict with the Supreme Court decision in the *Williams* case, and the Supreme Court ruling would prevail.

Plaintiff urges that the *Williams* case does not govern the present actions since there the policy provided: "Agents (which includes managers and superintendents) are not authorized to make, alter, or discharge contracts, or waive forfeitures or any provisions or terms of this policy." The language of each policy in the present actions provides that the policy contains the entire agreement between the company and all parties at interest, and further, "Its terms cannot be changed nor its contract varied except by a written agreement signed by an au-

thorized Officer of the Company. No other person shall have power to make or alter this contract or waive forfeitures." The agent testified that at the time he wrote the policy he was agent for the company, but that he had no right to approve or disapprove a policy, that "[T]o get one approved so that it is binding on the company, it has to be written up, with the questions answered yes or no, and it is forwarded to the home office in Chattanooga for approval."

We do not find it necessary to decide whether the variation in language restricting the authority to change or vary conditions in the policies here involved varies so much from the language of the policy in the *Williams* case as to distinguish that case and prevent its holding from governing the present actions. There is nothing in the present record to show any written agreement signed by an authorized officer of the company to change the terms or conditions of the policies.

Accordingly, under the authority of the *Williams* case, the alleged knowledge of the defendant's agent did not estop the insurer here from invoking the limited liability clause of its policies. See also *Life & Casualty Ins. Co. v. Williams,* 73 Ga. App. 462 (36 SE2d 871).

■ The plaintiff contends further that a jury question was raised as to whether or not the condition from which the insured was suffering was serious within the limitation of liability clause of the policy. Under the clause of the policy, quoted in division 1 of this opinion, the burden was placed upon the claimant to show that institutional, surgical, or medical attention was not for a serious condition.

The only medical evidence was that of the attending physician, who testified the insured had an acute coronary thrombosis in February of 1953; that he had high blood pressure which apparently led to the heart attack and was the cause of it; that, at the time of the attack in 1953, the insured was sent to the hospital for one day and sent home for bed rest of about three weeks; that the insured was treated periodically from that time until the time of his death; and that he was aware of the fact that he had had a heart attack; that acute thrombosis is a

serious matter and recovering from acute thrombosis is a serious matter; and that "I would say his condition was serious."

The beneficiary testified that she and the insured were married January 21, 1956; that "at the time we got married he didn't seem to have any trouble with his heart, he didn't complain of any"; and that she had known the insured about one year before they were married. She testified further that he worked every day, which, under the circumstances, might have authorized the jury to find that the condition was not serious.

However, it is apparent from the record that the plaintiff's testimony tending to show the heart condition was not serious related only to the period since she married the insured in January, 1956, and for "about one year before" they were married, and that she had no personal knowledge of his prior condition. The physician's undisputed testimony was that the insured had an acute coronary thrombosis in February, 1953, which was almost two years prior to the time the plaintiff knew the insured. There is thus in the record no evidence to contradict the physician's testimony as to the seriousness of the insured's condition, and the jury was not authorized to find that the plaintiff had proved the condition was not serious and thus avoid the limitation of liability clause in the policy.

Plaintiff makes the further contention that the insured was misled into a policy contract by reason of a deluding artifice and fraudulent misrepresentation perpetrated by the agent and thus the company could not rely on its limited liability clause. The petitions in the present cases are clearly actions on contract, not in tort, and do not charge fraud. This contention is without merit.

The defendant being liable only for the return of premiums paid, the trial judge erred in denying the motions for judgments notwithstanding the verdicts.

It is unnecessary to rule on whether the motions for new trials were improperly overruled.

*The judgments are reversed, and the trial court is directed to enter up judgments granting the motions for judgments notwithstanding the verdicts. Felton, C. J., and Hall, J., concur.*