## 41250. LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE v. TRUETT.

DECIDED SEPTEMBER 8, 1965—REHEARING DENIED
SEPTEMBER 23, 1965.

*Henry A. Stewart, Sr.,* for plaintiff in error.

*James I. Parker,* contra.

BELL, Presiding Judge. The only question for determination is whether the evidence demanded a verdict for the insurer under either the policy provision captioned "Effective Date" or the provision captioned "Incontestability." While both provisions depend for their efficacy upon the status of the insured's health on the date of issuance of the policy, yet there is a distinction under judicial decisions in the manner of their interpretation.

■ The "Effective Date" provision is not interpreted literally. "The application for insurance was not made a part of the policy. A provision in a life insurance policy, issued without the application being attached to and made a part thereof, that it shall not take effect unless on the date of policy delivery the insured is in sound health, *refers to a change in health between the time of taking the application for the insurance and the date of the policy;* and where the condition of health of the insured on the date of the policy is the same as on the date of the application, such provision will not avoid the policy." (Italics added). *Interstate Life &c. Ins. Co. v. Anderson,* 96 Ga. App. 584, 585 (100 SE2d 605). See also: *National Life &c. Ins. Co. v. Martin,* 35 Ga. App. 1 (132 SE 120); *Interstate Life &c. Ins. Co. v. McMahon,* 50 Ga. App. 543, 546 (179 SE 132); *Fowler v. Liberty National Life Ins. Co.,* 73 Ga. App. 765, 768 (38 SE2d 60); *Gulf Life Ins. Co. v. Griffin,* 80 Ga. App. 730, 733 (57 SE2d 296); *National Life &c. Ins. Co. v. Strickland,* 91 Ga. App. 179, 183 (85 SE2d 461); *National Life &c. Ins. Co. v. Goolsby,* 91 Ga. App. 361, 364 (85 SE2d 611).

Here there was no evidence tending to prove that the condition of the insured's health had changed between the date of the application and the date of issuance of the policy. Thus the evidence failed to show any defense at all under the policy provision captioned "Effective Date." In this respect a finding in favor of the plaintiff beneficiary was demanded.

■ The policy provision ineptly labeled "Incontestability" is

actually a limitation of liability clause of the kind dealt with in *Life & Cas. Ins. Co. v. Williams,* 200 Ga. 273 (36 SE2d 753, 163 ALR 686). This provision must be accorded a literal interpretation.

"In that case the Supreme Court held that the insurer was not estopped from asserting non-liability, except for the return of premiums paid, under the limitation of insurance clause and non-waiver provisions contained in an industrial life insurance policy, which limited the liability of the company to the return of premiums if the insured was not in sound health upon the issuance and delivery of the policy or if the insured before its date had tuberculosis. There the plaintiff contended the insurer was estopped from asserting non-liability under the limitation of insurance and non-waiver provisions by reason of the knowledge of the soliciting agent that the insured was not in sound health. In the present case a similar contention is asserted by the plaintiff, to the effect that the alleged knowledge of the agent was imputable to the company. . . Under the authority of the *Williams* case, the alleged knowledge of the defendant's agent did not estop the insurer here from invoking the limited liability clause of its policies." *Interstate Life &c. Ins. Co. v. Baldwin,* 105 Ga. App. 196, 198-200 (123 SE2d 899). See also: *Gray v. Life & Cas. Ins. Co.,* 48 Ga. App. 80 (1) (171 SE 835); *Life & Cas. Ins. Co. v. Carter,* 55 Ga. App. 622 (191 SE 153), aff. 185 Ga. 746 (196 SE 415); *Life & Cas. Ins. Co. v. Williams,* 73 Ga. App. 462 (36 SE2d 871); Anno. 163 ALR 691, 694-696. Thus if the insured was in fact in unsound health on the date of issuance and delivery of the policy, the literal interpretation of the limitation of liability clause would render the defendant liable to the beneficiary only for the amount of premiums paid upon the policy.

"The term 'sound health,' as used in a life insurance policy which provides that there shall be no liability under the policy if the insured is not in sound health at the date of the issuance of the policy, is properly defined . . . as follows: 'If the insured enjoyed such health and strength as to justify the reasonable belief that she is free from derangement of organic functions, or free from symptoms calculated to cause reasonable

apprehension of such derangement, and to ordinary observation and to outward appearance her health is reasonably such that she may with ordinary safety be insured and upon ordinary terms, the requirement of good health is satisfied. . . The terms "sound health" or "good health," used in a policy, mean that the applicant has no grave impairment or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system.' Under this definition 'sound health' consists not alone in the outward appearance of sound health, but also in a reasonable freedom from physical derangement and impairment as above defined." *National Life &c. Ins. Co. v. Smith,* 34 Ga. App. 242 (1) (129 SE 113); *National Life &c. Ins. Co. v. Falks,* 57 Ga. App. 384, 387-388 (195 SE 463); *Life & Cas. Ins. Co. v. Higdon,* 67 Ga. App. 679, 680 (21 SE2d 270). " 'Good health' is a relative term, and means such a condition of body and mind that the ordinary affairs of life may be attended to without serious strain upon the vital powers. In life-insurance cases it has been held that 'good health' does not ordinarily mean freedom from infirmity, and that 'good health' or 'sound health' means a state of health free from disease or ailment that affects the general soundness and healthfulness of the system seriously." *Atlantic &c. R. Co. v. Douglas,* 119 Ga. 658, 661 (46 SE 867); *Mutual Ben. Health &c. Assn. v. Bell,* 49 Ga. App. 640, 655 (176 SE 124); *Family Fund Life Ins. Co. v. Rogers,* 90 Ga. App. 278, 281 (82 SE2d 870).

In this case expert medical testimony showed that the insured, prior to his application for insurance in June 1962, had been under treatment for nervous convulsions and for kidney disease. However, his death was due, not to these ailments, but to suicide. The physician who had treated the insured testified that in December, 1960, the insured was completely and permanently disabled and "not able to enter into any gainful employment." In April, 1961, the insured "had improved enough to where he would be better off at work," and he was permitted to return to work. Most of the physician's testimony shows that "Medically, he [insured] was not a sound person without any symptoms" on the date of issuance and delivery of the policy. Yet, the physician's testimony was indefinite and equivocal, and he

stated upon cross examination, "If sound health is a relative term and does not mean absolute freedom from physical infirmity but only such a condition of body and mind that one may discharge the ordinary duties of life without serious strain upon the vital powers, I guess I would say to that extent that this man [insured] was in generally sound health."

While this medical evidence would have supported a finding that the insured was not in sound health, it also is sufficient to support a finding to the contrary. Even if the physician had not conceded that the insured was in sound health within one legal definition of that condition, "The opinion of an expert witness is competent testimony to be weighed by the jury to aid them in coming to a correct conclusion; but such testimony is not so authoritative that the jury are bound to believe it and to be governed by it. The jury may deal with such testimony as they see fit, giving it credence or not." *Commercial Cas. Ins. Co. v. Mathews,* 57 Ga. App. 446, 454 (195 SE 887). Moreover, non-expert testimony as to the insured's demeanor, lack of complaint, and regularity in the heavy work that he performed was sufficient to support a finding that insured was in good health. In this status of the evidence the jury certainly were authorized to disregard the self-contradictory opinion of the physician that the insured was not medically sound and to render a verdict for the plaintiff beneficiary.

The various grounds of the amendment to defendant's motion for new trial were merely elaborations upon the general grounds.

The trial court did not err in denying defendant's motion for judgment notwithstanding the verdict and denying its amended motion for new trial.

*Judgment affirmed. Frankum and Hall, JJ., concur.*

ON MOTION FOR REHEARING.

PER CURIAM. The plaintiff in error relies on *Brown v. Interstate Life &c. Ins. Co.,* 111 Ga. App. 552 (142 SE2d 330). However, in *Brown* the condition guarded against occurred after the application for insurance but before the effective date of the contract. That situation is not present in this case as there is no evidence showing a change in the health of the insured.

*Motion for rehearing denied.*